**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

_____

**RAY BROWN,**

                Plaintiff,

v.                                                                          No. CIV 10-0081 BB/ACT

**DANIEL MONTOYA,** *et al.***,**

                Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court for consideration of Defendant Daniel Montoya's and Defendant Joe R. Williams' (hereinafter "State Defendants") motion to dismiss (Doc. 18). Defendant Montoya is a probation officer for the State of New Mexico, Department of Corrections, Probation and Parole Division. Defendant Williams is the Secretary of Corrections for the State of New Mexico. The other Defendants in this matter are not parties to this motion. After considering all submissions of the parties and the applicable law, the Court will deny the motion.

**Background**

On March 29, 2007, Plaintiff pleaded guilty to two counts of false imprisonment as charged in the Second Judicial District Court for Bernalillo County, New Mexico[1]. The Honorable Denise Barela Shepherd then sentenced Plaintiff to a term of four years imprisonment followed by five years of supervised probation under New Mexico's "Intensive Supervised Probation" ("ISP") program.

Plaintiff completed his term of imprisonment in 2009 and was released on supervised probation. The Defendants assigned Plaintiff to the division's sex offender unit and directed Plaintiff to comply with conditions of probation applicable to sex offenders. Plaintiff was placed

---

[1] Plaintiff also pleaded guilty to other charges not relevant here.

on the New Mexico sex offender registry.  Plaintiff's attorney in the criminal proceedings then filed a motion for modification of the terms and conditions of Plaintiff's probation, wherein Plaintiff denied his status as a sex offender and sought to be released from the sex offender probation unit.

On June 24, 2009, Judge Shepherd held a hearing on Plaintiff's motion.  The State of New Mexico, acting through its Assistant District Attorney (ADA), did not oppose the modifications Plaintiff requested and confirmed that Plaintiff neither is a sex offender nor belongs in the sex offender probation unit.  Defendant Montoya, in contrast, asserted his belief that Plaintiff was properly placed in the sex offender probation unit.  Judge Shepherd concluded the hearing by granting Plaintiff's motion and ordering that Plaintiff be removed from the Sex Offender probation unit and from the New Mexico sex offender registry.  The State did not appeal Judge Shepherd's order of July 21, 2009.

Plaintiff currently serves his probation under the ISP program, and he has been removed from the New Mexico sex offender registry.  However, at least one Defendant (Aguilar) has allegedly ordered Plaintiff to register as a sex offender *after* Judge Shepherd entered a written order to the contrary.  *See Complaint*, ¶ 32-33.  Plaintiff filed the present case February 1, 2010, seeking damages and injunctive relief.  State Defendants assert that Plaintiff's claims are moot, that Plaintiff has failed to state a claim for which relief can be granted, and that they are shielded from damages liability by qualified and statutory immunity.

**Standard of Review**

In deciding a motion to dismiss, the Court must accept all well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.  *See Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008).  The Court looks to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief.  *See id.*  A plaintiff does not have to provide detailed facts, but the complaint must be "more than an unadorned, the-

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

Under Federal Rule of Evidence 201, the court may "take judicial notice of adjudicative facts at any stage of the proceedings, and in the absence of a request of a party." *Zimomra v. Alamo Rent-A-Car, Inc.*, 111 F.3d 1495, 1503 (10th Cir 1997). It is appropriate for this Court to review "document[s] central to the plaintiff's claim and referred to in the complaint" when evaluating the merits of a motion to dismiss. *Pace*, 519 F.3d at 1072. The court may take judicial notice of municipal ordinances without converting the motion to dismiss into a motion for summary judgment. *Id*. at 1504; *Skogen v. City of Overland Park*, Slip Copy, 2010 WL 973375 at *2 (D.Kan., March 16, 2010). It "may also take judicial notice of agency rules and regulations without converting the motion to dismiss to one for summary judgment." *Skogen* at *2. *See also, Baxter v. Samples*, 2009 WL 2242252, at *8 (D.Colo., July 22, 2009) (taking judicial notice of Bureau of Prison's administrative procedures in ruling on Rule 12(b)(6) motion to dismiss); *Muniz v. Kaspar*, 2008 WL 3539270, at *3 (D.Colo. Aug.12, 2008) (taking judicial notice of administrative regulation describing grievance process in ruling on Rule 12(b)(6) motion to dismiss).

**Discussion**

**A. Jurisdiction**

Plaintiff brings this suit pursuant to 42 U.S.C. § 1983, with underlying Fourteenth Amendment claims. This Court has original jurisdiction over the instant case pursuant to 28 U.S.C. § 1331 ("federal question jurisdiction"). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as those claims "form part of the same case or controversy" over which this Court has original jurisdiction.

### 1. Mootness

State Defendants correctly note that this Court "may adjudicate only actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp*., 494 U.S. 472, 477 (1990).  Since Plaintiff has been removed from the New Mexico sex offender registry and the sex offender unit of probation, State Defendants assert there is no ongoing case or controversy for this Court to adjudicate.

### a. 42 U.S.C. § 1983

As noted above, the Court must accept all well-pleaded allegations as true when ruling on a motion to dismiss.  Plaintiff brings this suit in order to recoup compensation for damages he sustained when he was listed on the New Mexico Sex Offender Registry and when he was subject to the sex offender probation unit. *See Complaint*, ¶ 32, 34.  The 42 U.S.C. § 1983 damages claim has not been litigated or resolved.  That portion, at least, of this suit is an ongoing controversy.

### b. Declaratory Judgment and Injunction

Plaintiff seeks a declaratory judgment that it "is unconstitutional for Defendants to classify [him] as a sex offender, require him to register as a sex offender, and subject him to the threat of criminal prosecution for failure to register as a sex offender." *Complaint*, ¶ 57.  Plaintiff also seeks an injunction "that prohibits Defendants from imposing such a classification, requirement, or threat in the future." *Complaint*, ¶ 57. The Court takes judicial notice of Judge Shepherd's Order mandating that Plaintiff shall not be placed in the sex offender probation unit, that Plaintiff shall not be required to register as a sex offender, and that he be removed from the New Mexico sex offender registry.  D-202-CR-200501215, Order dated July 21, 2009.[2]  Since the declaration and injunction

---

[2] The July 21, 2009 action by Judge Shepherd is labeled an "order" on the state court docket for case D–202-CR-200501215.  Although it is not labeled an "injunction," the order has the same effect–and therefore serves–as an injunction against categorizing or sanctioning Plaintiff as a sex offender. *Consumers Gas & Oil, Inc. v. Farmland Industries, Inc*., 84 F.3d 367, 370 (10 Cir. 1996) (noting that the term 'injunction' should not be defined narrowly but rather as any equitable judgment that can be enforced by contempt).

that Plaintiff desires in this case mirror Judge Shepherd's state court injunction, the Court must evaluate the effectiveness and benefit of issuing a potentially duplicative injunction.

The Tenth Circuit has determined that "a case or controversy no longer exists when it is impossible to grant any effectual relief." *Chihuahuan Grasslands Alliance v. Kempthorne*, 545 F.3d 884, 891 (10th Cir. 2008). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *Id*. (internal quotations omitted). "The party requesting relief must demonstrate a good chance of being likewise injured in the future" in order to survive a mootness challenge. *Id*. (internal quotations omitted). "With respect to declaratory relief, [courts] look beyond the initial controversy which may have existed at one time and decide whether the facts alleged show that there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. (internal quotations omitted). "If an event occurs while a case is pending that heals the injury and only prospective relief has been sought, the case must be dismissed." *Id*. (internal quotations omitted). Similarly, past misconduct, without more, does not warrant an injunction against future misconduct. *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).

In contrast, the Plaintiff in this case remains in constant contact with the New Mexico corrections department (which includes Defendants), because he is still on supervised release. Also, at least one Defendant (Aguilar) has allegedly engaged in the conduct to be enjoined *after* the state court issued an order to the contrary (*Complaint*, ¶ 33), and State Defendants' counsel continues to assert that Plaintiff pleaded guilty to a sex offense (see, e.g., Doc. 18, p. 2, 9) though the state court records show he did not (D-202-CR-200501215, criminal charge details). The State Defendants' counsel also continues to argue that Defendants may properly direct Plaintiff to register as a sex offender. Doc. 18, p. 9. Viewing the circumstances as a whole, it is not unlikely that Plaintiff would

suffer irreparable harm.  Therefore an injunction may ultimately be an appropriate remedy in this case.

While the issue of whether there remains a 'substantial controversy of sufficient immediacy and reality' may thus be debatable, "[v]iewing this case through the lens of a Rule 12(b)(6) dismissal," it is appropriate to tip the scale in Plaintiff's favor on close questions.  *Pace*, 519 F.3d at 1072.  The Court will deny therefore State Defendants mootness challenge at this stage.

### 2. *Younger* Abstention Doctrine

State Defendants argue in the alternative that this Court should abstain from hearing the instant case under the *Younger* doctrine of abstention.  *See Younger v. Harris*, 401 U.S. 37 (1971). The *Younger* doctrine requires federal court abstention where there is an ongoing state proceeding that implicates an important state interest and provides an adequate opportunity to litigate federal constitutional issues.  *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1204 (10th Cir. 2003). The gravamen of the *Younger* doctrine is "to permit state courts to try state cases free from interference by federal courts." *Younger*, 401 U.S. at 43.

Plaintiff is currently on probation and subject to the jurisdiction of New Mexico State Court; however, there are no ongoing proceedings related to his probation.  State Defendants argue that the *Younger* doctrine applies here, presumably because future litigation of his probation conditions may occur.  The Tenth Circuit precludes such prospective application of the *Younger* doctrine, noting that the "possibility of future prosecutions . . . is not sufficient to justify *Younger* abstention."  *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1242 (10th Cir. 2001).  Similarly, the Ninth Circuit has explicitly held that "[p]robation is not a pending criminal action for Younger purposes." *Almodovar v. Reiner*, 832 F.2d 1138, 1141 (9th Cir. 1987).

Moreover, proceeding with this case would not contravene the purpose of the *Younger* doctrine, as Plaintiff seeks to have the state court injunction *upheld* and *enforced*.  He does not bring suit in this Court as a collateral attack on his state court convictions, but instead he brings this suit for damages and injunctive relief based on his claim that Defendants violated state and federal law. Since State Defendants have not cited an ongoing or unresolved state judicial proceeding, *"Younger* abstention is patently inapplicable." *Prairie Band of Potawatomi Indians* 253 F.3d at 1242-1243.

### B. Federal Rule of Civil Procedure 12(b)(6)

State Defendants also argue for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), for "failure to state a claim upon which relief can be granted."  Plaintiff brings this suit under 42 U.S.C. § 1983; a proper claim for relief under this statute must allege that each defendant a.) acted under color of state law, and b.) violated the plaintiff's rights under federal law.

### 1. Personal Responsibility

Plaintiff must establish "a defendant's direct personal responsibility for the claimed deprivation of a constitutional right" in order for that defendant to be liable under 42 U.S.C. § 1983. *Trujillo v. Williams*, 465 F.3d 1210,  1227 (10th Cir. 2006).   While a defendant's direct *responsibility* for a § 1983 violation is necessary, a defendant's direct *participation* in the violation is not.  *Buck v. City of Albuquerque,* 549 F.3d 1269*,* 1279 (10th Cir. 2008) (noting that "[a]ny official who 'causes' a citizen to be deprived of her constitutional rights can also be held liable" under § 1983).   "A plaintiff could establish the defendant-supervisor's personal involvement by demonstrating his personal participation, his exercise of control or direction, *or* his failure to supervise." *Dodds v. Richardson,* 614 F.3d 1185, 1195 (10th Cir. 2010)(emphasis added). It is settled law that a supervisor's "personal involvement does not require direct participation" for § 1983

7

liability. *Id.* "If the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights," then the direct personal responsibility requirement of § 1983 is satisfied. *Id.* at 1279-1280 (quoting *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir.1990)).

a. Defendant Williams

Defendant Williams avers that he is not liable to Plaintiff under § 1983, because he held a supervisory position and did not directly sanction Plaintiff as a sex offender. Doc. 18, 6-7. Defendant Williams argues that supervisors are only liable if they "participated or acquiesced in the alleged violations" (Doc. 18, p. 8, citing *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988) as authority for that rule). He misconstrues the standard for § 1983 supervisory liability.

Supervisors may be held liable if they play a role in the course of events leading up to the violation. *Buck*, 549 F.3d at 1289. Indeed, the circumstances of *Buck* are analogous to those described by Plaintiff in his complaint. The supervisory official in *Buck* was liable under § 1983 because he "played a role" in developing the Albuquerque Police Department's plan for the handling of a large antiwar protest and was the supervisor of the lower-ranked officers accused of violating the plaintiff's rights. *Id.*

Similarly, Defendant Williams, in his capacity as Secretary of Corrections, personally signed the corrections department policies that pertain to sex offenders. Corrections Department Regulations No.'s CD-040900 to CD-040901, CD-053200 to CD-053202. Those regulations were "Reviewed/Revised" May 26, 2010. *Id.* They define "sex offense" to include "[f]alse imprisonment when the victim is under 18 years of age," and define "sex offender" to include anyone "convicted of" such an offense. CD-053200, at 2; CD-040900, at 2. The Court takes judicial notice of NMSA

§ 30-4-3, which lists the elements of the offense of false imprisonment. *Zimomra*, 111 F.3d at 1503. The victim's age is not an element of the offense. NMSA § 30-4-3.

The corrections department policies require all Probation and Parole Officers (PPO's) to "ensure that probationers and parolees under their supervision who are sex offenders properly register as sex offenders with the appropriate county sheriff," but they do not include a provision to hold a hearing where the underlying crime is not a sex offense on its face. CD-040900, at 4; CD-053200, at 3. The policies impose these requirements on "all entities and facilities that contract with the Corrections Department to house [sex offender] inmates." CD-040900, at 3.

On its face, the New Mexico crime of false imprisonment is not a sex offense. NMSA § 30-4-3; CD-040900(B). *Cf. ACLU of NM v. City of Albuquerque*, 137 P.3d 1215, 1225-26 (N.M. App. 2006) (city ordinance making kidnapping of a minor a sexual offense requiring registration is not rationally related to governmental goals). It is not a sex offense unless the victim is under 18 years of age. NMSA § 30-4-3; CD-040900(B). If the original criminal court proceedings that led to the false imprisonment conviction did not address the age of the victim, then, as Plaintiff contends, due process might require that there must be some sort of subsequent hearing to determine that critical fact before labeling the conviction a 'sex offense.' *See, Coleman v. Dretke,* 395 F.3d 216, 222 (5th Cir. 2004) (finding that the designation of 'sex offender' was analogous to the designation 'mentally ill' and therefore implicated Due Process concerns); *Kirby v. Siegelman*, 195 F.3d 1285, 1292 (11th Cir.1999) (holding that a state's classification of a prisoner as a sex offender and requirement that he complete sex offender treatment as a precondition to parole eligibility implicated a liberty interest under the Due Process Clause); *Neal v. Shimoda*, 131 F.3d 818, 831 (9th Cir.1997) (holding that a state must provide a hearing before classifying a prisoner as a sex offender and requiring the prisoner

9

to complete a treatment program as a condition to parole eligibility); *cf. Chambers v. Colo. Dep't of Corr.*, 205 F.3d 1237, 1243 (10th Cir.2000) (holding that the state's imposition of sex offender status on an inmate never convicted of a sex offense, combined with a reduction in good time credits if the inmate did not participate in treatment, implicated a state-created liberty interest).

Since the corrections department policies do not provide for a hearing when the underlying conviction is not a sex offense on its face, those policies run the risk of violating the due process rights of individuals with such ambiguous convictions. *ACLU of NM*, *supra*. Plaintiff alleges that he did not receive adequate legal process to determine if he were a sex offender before Defendants so categorized him. *Complaint*, ¶ 43. Thus, the corrections department policies gave rise to at least some of his Due Process claims in this suit. To the extent that Defendant Williams, as Secretary of Corrections, plays a role in developing and administering such policies, he arguably may be individually liable under 42 U.S.C. § 1983. *Dodds,* 614 F.3d at 1195; *Buck*, 549 F.3d at 1289.

In the alternative, Defendant Williams asserts legislative immunity as a defense to § 1983 liability arising from the corrections department regulations. Doc. 24, p. 4. Legislators are entitled to absolute immunity from § 1983 claims arising from their *legislative* acts. *Kamplain v. Curry County Bd. of Com'rs*, 159 F.3d 1248, 1250-1251 (10th Cir. 1998) (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 52 (1998)). Judicial and executive officers also enjoy legislative immunity "when acting in [a] legislative capacity." *Supreme Court of Virginia v. Consumers Union of U. S.*, 446 U.S. 719, 734 (1980). "The government official seeking immunity bears the burden of showing that an exemption from personal liability is justified." *Kamplain*, 159 F.3d at 1251. Defendant Williams, a member of the executive branch of state government, must show that his approval and promulgation of the corrections department regulations is a legislative, rather than executive, act.

*See id*. Executive branch regulations may, in effect, be legislative instead of executive acts.  See *Grunert v. Campbell*, 248 Fed.Appx. 775, 777 (9th Cir. 2007).

"Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it."*Kamplain*, 159 F.3d at 1251 (quoting *Bogan*, 523 U.S. at 52). The 'legislative nature' of actions is not determined by "their form but [by] whether they contain matter which is properly to be regarded as legislative in its character and effect.'" *Id*. (quoting *INS v. Chadha*, 462 U.S. 919, 952 (1983)).  "The essentials of the legislative function are the determination of the legislative policy and its formulation and promulgation as a defined and binding rule of conduct." *Kamplain*, 159 F.3d at 1251 (internal quotations omitted).  The enactment or promulgation of public policy, for example, are hallmarks of legislative action.  *Cf*., *Kamplain*, 159 F.3d at 1252 (finding board action to be administrative rather than legislative where it did not 'concern the enactment or promulgation of public policy').

Defendant Williams has not yet provided the Court with information about the actions he has taken in regard to the corrections department policies.  Nor has he provided evidence that those polices are legislative, versus administrative, in nature.  It is too early in the proceedings for the Court to make a decision regarding Defendant Williams' legislative immunity.  Since he bears the burden of establishing grounds for legislative immunity, the Court will find he is not legislatively immune at this juncture.

### b. Defendant Montoya

At all relevant times, Defendant Montoya served as a probation officer for the State of New Mexico, Department of Corrections, Probation and Parole Division. *Complaint*, ¶ 4. Defendant Montoya testified to Judge Shepherd that Plaintiff is a sex offender without "any factual basis . . .

11

or evidence to support his allegation." *Complaint*, ¶ 26.  Plaintiff has pleaded sufficient details to establish Defendant Montoya's direct, personal responsibility in the alleged violations and to survive State Defendants' motion to dismiss.

### 2. State-of-Mind Requirement

In the alternative, State Defendants argue that Plaintiff has only alleged their *negligence* in ordering him to register as a sex offender.  Doc. 24, p.10.  Although 42 U.S.C. § 1983 does not contain a specific state-of-mind requirement, the Tenth Circuit has established that plaintiffs must show the state-of-mind requirement for each constitutional violation.  *Dodds*, 614 F.3d at 1205. Here Plaintiff alleges Due Process violations, which require more than negligence.  *Cf.*, *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (holding that "the Due Process Clause is simply not implicated by a negligent act of an official"); *Darr v. Town of Telluride, Colo*, 495 F.3d 1243, 1257 (10th Cir. 2007) (holding that mere negligence is not sufficient to sustain a  § 1983 claim).

The Tenth Circuit has found that a substantive-due-process claim is proper where the Plaintiff establishes that the "governmental action is arbitrary, irrational, or shocking to the contemporary conscience."  *Darr*, 495 F.3d at 1254.  It has also upheld such claims where the defendants were alleged to have acted with "deliberate indifference."  *Dodds*, 614 F.3d at 1205.  However, the Tenth Circuit has not definitely established the state of mind requirement for a due process claim.  *Id.* Instead, it "assumed, without deciding, deliberate indifference constitutes the required state of mind" for those claims.  *Id.*

Plaintiff states in his complaint that Defendants, including State Defendants, acted with "intentional, malicious, sadistic, willful, wanton, obdurate . . . gross and reckless disregard of [his] constitutional rights."  *Complaint*, ¶ 39.  He provided the statements of ADA Gray to support this

claim.  The ADA stated that he "could find no link between the crimes for which [Plaintiff] was being charged and him being placed in a sex offender unit." *Complaint*, ¶ 25.  Neither did the ADA know "how the Defendants came up with their criteria for accusing Plaintiff of being a sex offender." *Complaint*, ¶ 27.

Based on these statements contained in Plaintiff's complaint, this Court can conclude for purposes of this motion that there was no basis for Defendants to categorize Plaintiff as a sex offender.  Since there was no evidence suggesting Plaintiff was a sex offender, this Court can also reasonably conclude for purposes of this motion that Defendants, including State Defendants, were more than just negligent when they categorized him as a sex offender.  Assuming Plaintiff's claims to be true, it appears that Defendants may well have acted arbitrarily when applying SORNA to Plaintiff.  Defendant Montoya allegedly "did not state any factual basis or present any evidence" as to why Plaintiff should be categorized as a sex offender.  *Complaint*, ¶ 26.  Such actions, if true, would be sufficient to support a finding of 'arbitrary, irrational' government action by Defendant Montoya.  *Darr*, 495 F.3d at 1254.

As to Defendant Williams, he could be found to have acted with 'deliberate indifference' in promulgating the corrections department regulations that allow PPO's to sanction individuals as sex offenders without providing a hearing in cases of ambiguous underlying offenses.  *See* discussion, p. 9-10 *supra*; *Dodds*, 614 F.3d at 1205 (sheriff, as policy-maker for the jail, was subject to supervisory liability under § 1983 where jail policies were found to be unconstitutional).  Therefore, even if Defendant Williams did not know that the other Defendants were allegedly violating Plaintiff's rights, he is still liable under § 1983 because he promulgated regulations Plaintiff alleges to be unconstitutional.  *Dodds*, 614 F.3d at 1205

13

This Court denies State Defendants' motion to dismiss.  Fed. R. Civ. P. 12(b)(6).

### 3. Constitutionality of the Registration Requirement

State Defendants also argue that Plaintiff has not articulated a constitutional violation and so has not stated a colorable § 1983 claim.  They make multiple arguments that the state law requiring persons convicted of false imprisonment of a minor to register as a sex offender is constitutional.  *See*, *e.g*., Doc. 18, p. 9; Doc. 24, p. 8.  However, that question is not before the Court.

Plaintiff did not plead guilty to the crime of false imprisonment of a minor.  *Cf.* D-202-CR-2000501215, Criminal Charges (indicating that he pleaded guilty to two counts of false imprisonment).  Indeed he could not have, as no such offense exists in New Mexico.  Plaintiff did plead guilty to two counts of false imprisonment under NMSA § 30-4-3, which defines the offense as "intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so."  *See* D-202-CR-2000501215, Criminal Charges. The victim's age is not an element of the offense.  NMSA § 30-4-3.

Plaintiff does not challenge the constitutionality of NMSA § 29-11A-3(7), which deems false imprisonment a sex offense when the victim is under 18 years old.  Rather, Plaintiff argues that SORNA does not apply to him, because he did not plead guilty to the offense described at NMSA § 29-11A-3(7) (false imprisonment of a minor)**.**  Since SORNA does not apply to him, Plaintiff asserts that Defendants violated his constitutionally protected liberty rights when they entered him on the sex offender registry and placed him in the sex offender probation unit.  *Complaint*, ¶ 23, 37.

"Liberty under law extends to the full range of conduct which the individual is free to pursue, and it cannot be restricted except for a proper governmental objective."  *Bolling v. Sharpe,* 347 U.S. 497, 499-500 (1954).  Plaintiff alleges that he did not qualify as a sex offender, so the Defendants

did not have 'a proper governmental objective' when they restricted his conduct via the sex offender

probation program.  *See* D-202-CR-2000501215, Order dated July 21, 2009.  Such erroneous

application of SORNA allegedly resulted in an "unwarranted governmental restriction on his privacy,

reputation, employment, education, housing, travel, speech, expression, association, and child-

rearing."  *Complaint*, ¶ 37.

The Court will take judicial notice of the provisions of SORNA and corrections department

policies that pertain to the probation and parol of sex offenders.  *See, Zimomra*, 111 F.3d at 1503;

NMSA § 31-21-10.1(section entitled 'Sex offenders; period of parole; terms and conditions of

parole'); Correction Department Policy No.'s CD-053200-CD-053202.  These regulations set out

the restrictions that apply to sex offenders who are released from custody to parole or probation.

Pursuant to these regulations, an individual in the sex offender probation unit "is subject to

restrictions that may be more stringent than those normally imposed on other types of offenders."

Correction Department Policy No. CD-053200(E).  Specifically, the stringent restrictions include

limitations on travel, employment, residence, contact with minors, child rearing, and marriage[3].  *See*

---

[3] **Travel**: Corrections Department Policy CD-053200(D)(requiring sex offender to submit a Travel Request before moving to another district in the state); CD-053202(G)(describing process for obtaining travel permits, warning that officers must "be especially mindful of the need to restrict the activities of sex offenders more closely than other types of offenders," and noting that officers are not obligated to grant permission to travel).

**Employment**: Corrections Department Policy CD-053201(D)(requiring parole officer to visit the sex offender's place of employment and notify the employer of his specific sex offenses); CD-053202(H)("Sex offenders may be denied permission to engage in any type of place [sic] or employment..."); CD-053202.4 ("prohibited positions include, but are not limited to: security/police officer, daycare, nursing home, assisted living staff, home healthcare staff, city or school bus driver, food delivery driver, cab driver, and...positions...which require direct contact with minor children.").

**Residence**: Corrections Department Policy CD-053202(I) (Sex offenders may not live within 1,000 feet of "an area where children may frequent such as a school, day care, and/or community center"); CD-053202.4 (officer must give prior approval before moving, and no overnight guests without approval).

Correction Department Policy No.'s CD-053200-CD-053202.   Pursuant to the extra-stringent probation conditions for sex offenders, "Defendants required Plaintiff to quit his job, restricted his right to associate with and participate in the upbringing of his son, and restricted his movements around parks and other places where children gather."  *Complaint*, ¶ 23.

State Defendants respond that, even if Plaintiff were placed in the wrong unit of probation, "New Mexico's statute and regulations regarding probation do not confer a liberty interest in the issuance of conditions that meet with the probationer's approval."  Doc.18, p. 13.   Their argument, in essence, is that since Plaintiff was properly on probation they were free to impose any conditions on him they saw fit.   The state court, however, disagreed and ordered Plaintiff removed from the registry and sex offender probation unit.   D-202-CR-200501215, Order dated July 21, 2009.

Plaintiff claims his liberty, good name, and reputation have been harmed by Defendants.  *Complaint*, ¶ 34, 40, 45, 51.   "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, a protectible liberty interest may be implicated that requires procedural due process in the form of a hearing to clear his name." *Gwinn v. Awmiller*, 354 F.3d 1211, 1216 (10th Cir. 2004) (quoting *Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1558 (10th Cir.1993)).   "Damage to one's reputation alone, however, is not enough to implicate due process protections." *Id*. at 1216.   "Instead, a plaintiff asserting that the government has violated the Due Process Clause by impugning his . . . good name, reputation, honor, or integrity

---

**Contact with Minors**: Corrections Department Policy CD-053202.4 (no contact with any child under 18).
        **Child Rearing**: Corrections Department Policy CD-053202.4 (no unsupervised contact with offender's own children, including cohabitation).
        **Marriage**: Corrections Department Policy CD-053202.4 (prohibiting dating or marriage to anyone who has custody of minor children).

. . . must demonstrate that: (1) the government made a statement about him or her that is sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she asserts is false, and (2) the plaintiff experienced some governmentally imposed burden that significantly altered [his] status as a matter of state law." *Id.* (internal quotations omitted) (citing *Paul v. Davis*, 424 U.S. 693, 710-711(1976)).

Classifying a parolee as a sex offender does significantly alter that person's status as a matter of state law. *Id.* (finding prisoner's liberty interests were implicated by being classified as a sex offender); *Creekmore v. Attorney General of Texas*, 341 F.Supp.2d 648, 665 (E.D.Tex, 2004); NMSA § 31-21-10.1(enumerating the manner and means of restricting sex offenders' conduct); Correction Department Policy No.'s CD-053200-CD-053202 (listing the specific terms and requirements of probation for sex offenders). Plaintiff emphatically asserts that the classification is false, and it is capable of being proved false by consulting state court documents. To that end, this Court takes judicial notice of Judge Shepherd's Order mandating that Plaintiff be removed from the sex offender registry and that he shall not be placed in the sex offender probation unit. D-202-CR-200501215, Order dated July 21, 2009.

Finally, there can be no question but that being falsely labeled a sex offender may be sufficiently derogatory' to injure one's reputation. *See, e.g., Chambers,* 205 F.3d at 1242-1243 (noting that 'sex offender' is a "label replete with inchoate stigmatization" that merits due process protection); *Coleman*, 395 F.3d at 222 ("prisoners who have not been convicted of a sex offense have a liberty interest created by the Due Process Clause in freedom from sex offender classification and conditions"); *Kirby,* 195 F.3d at 1292 ("the stigmatizing effect of being classified as a sex offender constitutes a deprivation of liberty under the Due Process Clause" when individual was not

17

a convicted sex offender); *Neal*, 131 F.3d at 829 (stating that "[w]e can hardly conceive of a state's action bearing more 'stigmatizing consequences' than the labeling of a prison inmate as a sex offender").

Therefore, Plaintiff has properly pleaded a violation of constitutional liberty rights by claiming that Defendants miscategorized him as a sex offender. The Court will deny State Defendants' constitutional argument in support of their motion to dismiss.

### C. Qualified Immunity

State Defendants argue that even if they did violate Plaintiff's constitutional rights, they are still harbored from liability by the doctrine of qualified immunity. In § 1983 cases, qualified immunity shields government officials from damages liability "for the performance of their discretionary functions when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1978)). "The contours of the [violated] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 83 U.S. 635, 640 (1987). The Tenth Circuit requires that "a Supreme Court or other Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains" in order for a law to be "clearly established" for purposes of precluding qualified immunity. *Murrell v. School Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (10th Cir. 1999).

Plaintiff claims that Defendants have violated his due process and equal protection rights under the Fourteenth Amendment of the U.S. Constitution. The Fourteenth Amendment provides,

in relevant part, that "no State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

As discussed in detail above, Plaintiff has properly pleaded that Defendants violated his constitutional liberty rights by labeling him a sex offender.  It is clearly established law that the corrections department, including subordinate agencies such as the county sheriff's office, may not sanction an individual as a sex offender when that individual has not been convicted of a sex offense. *See, e.g.*, *Paul*, 424 U.S. at 710-711; *Chambers*, 205 F.3d at 1243; *Gwinn*, 354 F.3d at 1216; *Coleman*, 395 F.3d at 223-24; *Kirby*, 195 F.3d at 1292; *ACLU of NM*, 137 P.3d at 1226.

Plaintiff also alleges that Defendants violated his right to Due Process when they classified him as a sex offender without a hearing to establish the age of his victims.  Both the Supreme Court and the Tenth Circuit have suggested that the Fourteenth Amendment right to due process requires the government to provide a hearing of some kind where the relevant fact or facts of a case such as this one are in dispute.  *Cf. Connecticut Dept. of Public Safety*, 538 U.S. at 7 (denying plaintiff's due process violation claim where state denied him a hearing on a fact not relevant to his status as a sex offender); *Gwinn*, 354 F.3d at 1218-19.  Since the crime of false imprisonment is not a sex offense unless the victim is a minor, the age of Plaintiff's victims is a relevant fact in this case.  Plaintiff claims that the age of his victims was never raised in any of the state court proceedings and that Defendants required him to register as a sex offender even after the state court ruled that SORNA does *not* apply to Plaintiff.  *Complaint*, ¶ 20, 33.  Without a hearing to establish the critical fact of the victims' ages, Plaintiff argues that Defendants violate his due process rights by categorizing him as a sex offender.

State Defendants respond that even if they did violate Plaintiff's constitutional rights, they acted in good faith and are still protected by qualified immunity. However, that is not the standard by which the qualified immunity defense is assessed. "To overcome the qualified immunity defense, the plaintiff must identify a clearly established statutory or *constitutional right of which a reasonable person would have known*, and then allege facts to *show that the defendant's conduct violated that right*." *Herring v. Keenan*, 218 F.3d 1171, 1175 (10th Cir. 2000) (emphasis added). As discussed in detail above, Plaintiff has properly alleged that Defendants violated his constitutional liberty rights by labeling him a sex offender. It is clearly established law that the corrections department, including subordinate agencies such as the county sheriff's office, may not sanction an individual as a sex offender when that individual has not been convicted of a sex offense. *See, e.g.*, *Paul*, 424 U.S. at 710-711; *Chambers*, 205 F.3d at 1243; *Gwinn*, 354 F.3d at 1216; *Coleman*, 395 F.3d at 223-24; *Kirby*, 195 F.3d at 1292. Accepting Plaintiff's allegations as true, a reasonable official in the defendants' positions would have known that Plaintiff's constitutional rights were being violated. *See ACLU of NM*, 137 P.3d 1226 (city ordinance requiring sex offender registration without a hearing violates Due Process). State Defendants are not entitled to the protection of qualified immunity.

### D. Statutory Immunity

State Defendants also invoke statutory immunity against liability. They state that SORNA was created to comply with the Wetterling Act, which provides state officials immunity for "good faith conduct" under the act. 42 U.S.C. § 14071(f); Doc. 18, p. 16. Plaintiff denies that the Defendants acted in good faith when they sanctioned him pursuant to SORNA (*Complaint*, ¶ 39), and thus argues that the Wetterling Act does not provide immunity in this case. The Court need not

decide at this stage whether the Wetterling Act applies.  When reviewing a motion to dismiss, the allegations must be construed in Plaintiff's favor.  *Pace*, 519 F.3d at 1073.  Since Plaintiff has alleged that Defendants acted in bad faith when applying the law and alleged facts that could support such a finding, State Defendants are not shielded from immunity by the Wetterling Act at this point.

### E. State Law Claims

State Defendants also claim that they are not liable for Plaintiff's state law claims brought against them under the New Mexico Constitution.  Doc. p. 16.  They raise three basic arguments in support of that claim: 1.) 42 U.S.C. § 1983 does not impose liability for violations of the New Mexico Constitution; 2.) They are immune from liability under the New Mexico Tort Claims Act ("NMTCA"); and, 3.) They are immune from liability under the Wetterling Act.  As Plaintiff points out, however, none of these arguments are pertinent to the claims Plaintiff is raising under the New Mexico Constitution.

Plaintiff invokes the New Mexico Constitution only for purposes of declaratory and injunctive relief.  *Complaint*, ¶ 60-61.  The New Mexico Declaratory Judgment Act allows such a suit.  NMSA § 44-6-13 ("For the purpose of the Declaratory Judgment Act, the state of New Mexico, or any official thereof, may be sued and declaratory judgment entered when the rights . . . of the parties call for a construction of the constitution of the state of New Mexico, the constitution of the United States or any of the laws of the state of New Mexico or the United States, or any statute thereof"); *New Mexico Right to Choose/NARAL v. Johnson*, 975 P.2d 841, 850 (N.M. 1998).  His claim for prospective relief, versus damages, does not implicate the NMTCA.  *Cf*. NMSA § 41-4-4(A) (providing that "[a] governmental entity and any public employee while acting within the

scope of duty are granted immunity from liability for any *tort*") (emphasis added).  Thus, NMTCA does not provide State Defendants immunity from this suit.

**Conclusion**

Plaintiff has properly pleaded claims for which relief may be granted.  This matter is an ongoing case or controversy that does not interfere with earlier state court proceedings.  State Defendants are not protected from liability by either qualified immunity or statutory immunity.  Thus, State Defendants' motion to dismiss will be denied.

**ORDER**

It is hereby ORDERED that State Defendants' Motion to Dismiss the Complaint (Doc. 18) be, and hereby is, DENIED.

Dated this 16th day of November, 2010.

_____
BRUCE D. BLACK
United States District Judge

22