# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RAY BROWN and
KENJI AUSBORN,

       Plaintiffs,

vs.                                                                No. CIV 10-0081 JB/ACT

DANIEL MONTOYA, DANIEL DOUGHERTY,
SUSAN BARELA, TROY RUPLINGER,
LIZ AGUILAR, MANUEL GONZALES III,
in their individual capacities,
DAN HOUSTON, in his official capacity as
BERNALILLO COUNTY SHERIFF,
GREGG MARCANTEL, in his official capacity as
SECRETARY OF CORRECTIONS,
GORDON E. EDEN, JR., in his official capacity as
SECRETARY OF THE DEPARTMENT OF
PUBLIC SAFETY, and JOHN DOES 1-50,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiffs' Motion to Compel Answers and

Responses to Plaintiffs' First Sets of Requests for Admission, Interrogatories, and Requests for

Production to Defendants Montoya, Barela, Houston, Marcantel, and Eden, filed September 28,

2012 (Doc. 110).  The Court held a hearing on November 16, 2012.  The primary issues are

whether the Court should compel Defendants Daniel Montoya, Susan Barela, Gregg Marcantel,

and Gordon E. Eden (the "State Defendants"), and Defendant Dan Houston to: (i) produce files for

individuals other than the Plaintiffs Ray Brown and Kenji Ausborn convicted of false

imprisonment and for individuals convicted of second-degree kidnapping; (ii) produce

information regarding the chain of command in the State Defendants' and Houston's offices; and

(iii) answer all of the Requests for Admission.  The Court will grant in part and deny in part the

requests.   The Court orders the State Defendants and Houston to: (i) produce ten files for individuals convicted of false imprisonment and ten files for individuals convicted of second-degree kidnapping, from January 1, 2008, to December 31, 2010, and limited to Bernalillo County; (ii) produce a chain-of-command chart; and (iii) admit, deny, or state why they cannot admit the Requests for Admission.   The Defendants may redact the names and addresses of the false imprisonment and kidnapping files if they wish.   The Court denies the portion of the motion regarding the County Deputies and intake personnel without prejudice to renewal if the Plaintiffs decide, after receiving the material, that the files contain relevant information and they need the rest of the records.   The Court orders the State Defendants and Houston to amend their answers to all Interrogatories regarding the applicable State or County offices' organization and chain of command to which they objected once, making a good-faith effort to find out who is in the chain of command, and, if later the Plaintiffs want the answers updated, the Court will likely grant that request.   The Court overrules the Defendants' objections to the Request for Admission.

## FACTUAL BACKGROUND

The Plaintiffs' lawsuit arises in the context of several statutes that the State of New Mexico enacted to control the behavior of individuals designated as sex offenders.   Brown and Ausborn pleaded guilty to the criminal charges of false imprisonment and second-degree kidnapping respectively.   They allege that the Defendants violated their constitutional rights by unlawfully subjecting them to the provisions of the sex offender statutes.

1.      **The New Mexico Sex Offender Statutes.**

Sections 31-20-5.2 and 31-21-10.1 of the New Mexico Statute Annotated 1978 set forth special terms and conditions required for sex offenders' parole as part of their judgment following a criminal conviction and/or sentence.   Both sections define "sex offender" as:

> [A] person who is convicted of, pleads guilty to or pleads nolo contendere to any
> one of the following offenses:
>
> > (1) kidnapping, as provided in Section 30-4-1 NMSA 1978, when
> > committed with intent to inflict a sexual offense upon the victim;
> >
> > (2) aggravated criminal sexual penetration or criminal sexual penetration in
> > the first, second or third degree, as provided in Section 30-9-11 NMSA
> > 1978;
> >
> > (3) criminal sexual contact of a minor in the second, third or fourth degree,
> > as provided in Section 30-9-13 NMSA 1978;
> >
> > (4) sexual exploitation of children in the second degree as provided in
> > Section 30-6A-3 NMSA 1978; or
> >
> > (5) sexual exploitation of children by prostitution in the first or second
> > degree as provided in Section 30-6A-4 NMSA 1978.

N.M.S.A. 1978, §§ 31-20-5.2(E) and 31-21-10.1(I).   The New Mexico Statutes Annotated 1978's

probation and parole statutes thus do not include any false-imprisonment offenses as a "sex

offense," and do not include kidnapping unless committed with the intent to inflict a sex offense

upon the victim.   See First Amended Complaint for Civil Rights Violations, Damages, and

Declaratory and Injunctive Relief ¶ 31, at 9, filed May 22, 2012 (Doc. 77)("Amended

Complaint")(citing N.M.S.A. 1978, §§ 31-20-5.2, 31-21-10.1).

In addition to these probation and parole statutes, New Mexico has a Sex Offender

Registration and Notification Act, N.M.S.A. 1978, §§ 29-11A-1 to -10 ("NMSORNA"), which

requires "sex offenders" to register with, and provide information to, the county sheriff, education

officials, and employers.   NMSORNA also imposes criminal penalties for failure to comply with

these registration requirements.   N.M.S.A. 1978, § 29-11A-4.   NMSORNA defines a "sex

offender" as someone who "is convicted of a sex offense pursuant to state, federal, tribal, or

military law . . . ."   N.M.S.A. 1978, § 29-11A-3(D).   Triggering these registration requirements

is NMSORNA's definition of "sex offense":

> [A]ny of the following offenses or their equivalents in any other jurisdiction:
>
> > (1) aggravated criminal sexual penetration or criminal sexual penetration in the first, second, third or fourth degree, as provided in Section 30-9-11 NMSA 1978;
> >
> > (2) criminal sexual contact in the fourth degree, as provided in Section 30-6A-3 NMSA 1978;
> >
> > (3) criminal sexual contact of a minor in the second, third or fourth degree, as provided in Section 30-9-13 NMSA 1978;
> >
> > (4) sexual exploitation of children, as provided in Section 30-6A-3 NMSA 1978;
> >
> > (5) sexual exploitation of children by prostitution as provided in Section 30-6A-4 NMSA 1978;
> >
> > (6) kidnapping, as provided in Section 30-4-1 NMSA 1978, when the victim is less than eighteen years of age and the offender is not a parent of the victim;
> >
> > (7) false imprisonment, as provided in Section 30-4-3 NMSA 1978, when the victim is less than eighteen years of age and the offender is not a parent of the victim;
> >
> > (8) aggravated indecent exposure, as provided in Section 30-9-14.3 NMSA 1978;
> >
> > (9) enticement of a child, as provided in Section 30-9-1 NMSA 1978;
> >
> > (10) incest, as provided in Section 30-10-3 NMSA 1978, when the victim is less than eighteen years of age;
> >
> > (11) solicitation to commit criminal sexual contact of a minor in the second, third or fourth degree as provided in Section 30-9-13 and 30-28-3 NMSA 1978; or
> >
> > (12) attempt to commit any of the sex offenses set forth in Paragraph (1) through (10) of this subsection, as provided in Section 30-28-1 NMSA 1978.

N.M.S.A. 1978, § 29-11A-3(E).   The statute defines a conviction as "a conviction in any court of

competent jurisdiction and includes a deferred sentence, but does not include a conditional discharge . . . ."   N.M.S.A. 1978, § 29-11A-3(A).   On May 18, 2006, the Court of Appeals of New Mexico declared unconstitutional requiring persons convicted of false imprisonment "without any sexual component" to register as sex offenders.   ACLU v. City of Albuquerque, 2006-NMCA-078, ¶ 25, 139 N.M. 761, 137 P.3d 1215.

       2.        **New Mexico Department of Corrections Sex Offender Policies.**

Current and former Secretaries of the New Mexico Department of Corrections ("NMDC") have signed official policies regarding "Sex Offender Registration, Tracking and Supervision," codified as New Mexico Department of Corrections Policy Nos. CD-053200 to CD-053202, and Nos. CD-040900 to CD-040901 and, at one time, published on the Department's official website. See Amended Complaint ¶ 26, at 7-8.   The Plaintiffs allege that the Corrections Department Sex Offender Policies do not comply with New Mexico's sex offender statutes.   See Amended Complaint ¶ 27, at 8.   First, these policies do not recognize that the statutes pertaining to sex-offender conditions of probation and parole define a "sex offense" more restrictively than the definition provided in NMSORNA.   See Amended Complaint ¶ 27, at 8.   The policies also do not reference the statutory requirement that a district court hold a hearing to determine the terms and conditions of a sex offender's probation, or NMSORNA's requirement that a sex offense conviction must occur before, and be determined by, a court of competent jurisdiction.   See Amended Complaint ¶ 27, at 8.

The Plaintiffs also allege that, in derogation of these statutory requirements and constitutional requirements, Marcantel's actions, as well as his predecessors and agents' actions with respect to the NMDC Sex Offender Policies, intentionally caused Probation and Parole Officers ("PPOs") and other state actors under their supervision to unilaterally determine whom to

subject to NMSORNA's sex-offender registration requirements, and to the special conditions of probation and parole for sex offenders, without a hearing before a court of competent jurisdiction before that determination is made.   See Amended Complaint ¶ 28, at 8.   Marcantel's actions with respect to these policies, as well as those of his predecessors and agents, also intentionally caused and directed PPOs and other state actors under their supervision to misclassify the Plaintiffs and other persons as being subject to conditions of probation and parole for sex offenders where, the Plaintiffs assert, they do not meet the statutory definition of a "sex offender" that the probation and parole statutes provide.   Amended Complaint ¶ 28, at 8-9.

The NMDC Sex Offender Policies define "sex offense" to include "[k]idnapping when the victim is less than 18 years of age" and "[f]alse imprisonment when the victim is under 18 years of age"; the policies further define "sex offender" to include anyone "convicted of" such an offense. Amended Complaint ¶ 29, at 9.   The NMDC Sex Offender Policies require all PPOs to "ensure that probationers and parolees under their supervision who are sex offenders properly register as sex offenders with the appropriate county sheriff," with no provision to afford a hearing or supply a factual basis for contending that someone was convicted of kidnapping or false imprisonment involving a victim under 18 years of age.   Amended Complaint ¶ 30, at 9.   The NMDC Sex Offender Policies nevertheless subject persons falling under its definition of "sex offender" to special conditions of probation and parole, including a special "behavioral contract."   Amended Complaint ¶ 31, at 9.   The NMDC policies do not acknowledge or provide for courts to have any role in deciding who is a sex offender or what is a sex offense, whether for purposes of registration or probation.   See Amended Complaint ¶ 31, at 9-10.   The NMDC Sex Offender Policies state that they apply to "all entities and facilities that contract with the Corrections Department to house [NMDC] inmates."   Amended Complaint ¶ 32, at 10.

-6-

The Plaintiffs allege that Gonzales, Houston, and state actors acting under their supervision have used and continue to use the NMDC Sex Offender Policies to determine the inmates whom they require to register as sex offenders, as well as to keep and maintain their records as to the inmates who have registered as sex offenders.  See Amended Complaint ¶ 33, at 10.  Similarly, according to the Plaintiffs, Eden, acting in his official capacity as Secretary of the New Mexico Department of Public Safety ("NMDPS"), and other state actors under his supervision, chose to rely on the integrity and accuracy of the information provided by other Defendants, and other state actors acting under the supervision of other Defendants, who ratify, adopt, institute, implement, incorporate, and/or maintain the NMDC Sex Offender Policies as the mechanism for identifying who should be classified as a sex offender.   Amended Complaint ¶ 34, at 10.   The Plaintiffs argue that the sex-offender registry created and maintained by the New Mexico Department of Safety also ratifies, adopts, institutes, implements, incorporates, and/or maintains the definitions and requirements of the NMDC Sex Offender Policies.   See Amended Complaint ¶ 34, at 10-11.

### 3.    The Defendants' Conduct with Respect to Brown.

Brown pled guilty to two counts of false imprisonment, along with other charges, in the Second Judicial District Court for the County of Bernalillo, New Mexico, in No. D-202-CR-200501215, on March 29, 2007.   See Complaint for Civil Rights Violations, Damages, and Declaratory and Injunctive Relief against all Defendants ¶ 19, at 5, filed February 1, 2010   (Doc.1-1)("Complaint").   Section 30-4-3 of the New Mexico Statutes Annotated defines the crime of "false imprisonment" as "intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so."   N.M.S.A. 1978, § 30-4-3.   In Brown's plea agreement in state court on March 29, 2007, there was no mention of the victims' age.   See Amended Complaint ¶ 36, at 11.   Brown's judgment and

sentence in state court does not contain any finding that the alleged victim of his false-imprisonment offenses was less than eighteen years of age, or that any of these offenses involved a sexual act or a sexual purpose.   See Amended Complaint ¶ 38, at 12.   Brown was sentenced to four-years imprisonment, followed by five years of supervised probation.   See Amended Complaint ¶ 37, at 11; Defendants Joe R. Williams' and Montoya's Motion to Dismiss at 2, filed March 24, 2010 (Doc. 18).[1]   Soon after Brown's March 24, 2009, release from prison,

---

[1]   In the Complaint for Civil Rights Violations, Damages, and Declaratory and Injunctive Relief, filed February 1, 2010 (Doc. 1)("Complaint"), the Plaintiffs sued Williams in his individual and official capacity, alleging:

> Defendant Joe R. Williams was acting under color of state law as the Secretary of Corrections for the State of New Mexico, charged with notifying sex offenders of their duty to register and administering sex-offender registration and probation programs under state law. Defendant Williams is sued in his individual capacity with respect to Plaintiff's claims for damages and in his official capacity with respect to Plaintiff's claims for prospective declaratory and injunctive relief.

Complaint ¶ 7, at 2.   Williams and Montoya moved to dismiss all claims against them on March 24, 2010, asserting: (i) the court lacks jurisdiction over the Plaintiffs' claim for injunctive and declaratory relief, because those claims are moot; and (ii) the Plaintiffs' claims fail to state a claim, because the claims do not allege that Williams and Montoya personally participated in the alleged unconstitutional activities, and because Williams and Montoya are entitled to qualified immunity. See Motion to Dismiss at 2-3, 6.   On November 16, 2010, the Honorable Bruce D. Black, Chief United States District Judge, denied the Motion to Dismiss.   See Brown v. Montoya, No. CIV 10-0081 BB/ACT, Memorandum Opinion and Order (Doc. 36)(D.N.M. Nov. 16, 2010). Williams and Montoya immediately appealed the portion of Judge Black's Memorandum Opinion and Order denying their Motion to Dismiss on qualified immunity grounds to the United States Court of Appeal for the Tenth Circuit.   See Notice of Appeal at 1, filed December 8, 2010 (Doc.39).   On appeal, the Tenth Circuit reversed Judge Black's denial of the motion to dismiss on qualified immunity grounds, reasoning: "Without specifically alleging Secretary Williams's personal involvement or anything about the Policy, Mr. Brown has alleged no connection between Secretary Williams and any constitutional violation."   Brown v. Montoya, 662 F.3d 1152, 1166 (10th Cir. 2011).   The Tenth Circuit remanded for further proceedings consistent with its decision.   See Brown v. Montoya, 662 F.3d at 1174; Mandate of United States Court of Appeals, filed November 30, 2011 (Doc. 59).   Pursuant to Judge Black's leave, see Memorandum Opinion and Order, filed May, 21, 2012 (Doc. 75), the Plaintiffs filed their Amended Complaint, terminating Williams as a defendant and adding Marcantel, the current Secretary of Corrections for the State of New Mexico, in his official capacity only.   See Amended Complaint ¶ 12, at 3.

Montoya and Defendant Daniel Dougherty ordered Brown to register as a sex offender pursuant to N.M.S.A. 1978, § 29-11A-3, threatening him with arrest if he failed to do so, based on the information that one of the people he falsely imprisoned was under the age of eighteen.  See Amended Complaint ¶ 40, at 12.  Brown filled out the paperwork to register as a sex offender under NMSORNA.  See Amended Complaint ¶ 41, at 13.  Several months after his release, on July 21, 2009, the Honorable Denise Barela-Shepherd, State District Judge, Second Judicial District Court, County of Bernalillo, State of New Mexico, entered an order removing Brown from the sex offender registry, providing that Brown "will not be required to register as a Sex Offender," and "Brown's name and likeness shall be removed from the New Mexico Sex Offender Registry." Amended Complaint, ¶ 49, at 15; Motion to Dismiss at 2.  When Brown was pulled over for a traffic stop on the weekend of April 17, 2011, he appeared as a sex offender on the Bernalillo County Sheriff's Deputy's computer.  See Amended Complaint ¶ 67, at 19.

### 4.    The Defendants' Conduct with Respect to Brown.

Ausborn pled guilty to two counts of second-degree kidnapping and one count of second-degree aggravated burglary in the Ninth Judicial District Court for Curry County, New Mexico, in No. D-905-CR-97000198, on August 20, 1997.  See Amended Complaint ¶ 73, at 20. Ausborn was sentenced to eighteen-years imprisonment followed by two years of supervised parole.  See Amended Complaint ¶ 75, at 21.  Section 30-4-1 of the New Mexico Statutes Annotated 1978 provides the definition of kidnapping:

> Kidnapping is the unlawful taking, restraining, transporting or confining of a
> person by force, intimidation or deception, with intent:

The Plaintiffs noted, however, in naming Defendants John Does 1-50 as defendants, that they "intend to name those officials and employees (including but not limited to former Secretary of Corrections Joe R. Williams) as additional Defendants in this case if and when such information is disclosed through discovery."  Amended Complaint ¶ 14, at 3-4.

(1) that the victim be held for ransom;

(2) that the victim be held as a hostage or shield and confined against his will;

(3) that the victim be held to service against the victim's will; or

(4) to inflict death, physical injury or a sexual offense on the victim.

N.M.S.A. 1978, § 30-4-1.   The statute provides that second-degree kidnapping by definition does not involve a sexual offense: "Whoever commits kidnapping is guilty of a first-degree felony, except that he is guilty of a second degree felony when he voluntarily frees the victim in a safe place and does not inflict physical injury or a sexual offense upon the victim."   N.M.S.A. 1978, § 30-4-1(B).

Neither Ausborn's state court judgment nor sentence contain any finding that any alleged victim of his second-degree kidnapping offenses was less than eighteen years of age, or that any of these offenses involved a sexual act or a sexual purpose. See Amended Complaint ¶ 76, at 21. After release from prison, Defendant Susan Barela, a supervisor of case managers at the Grant, New Mexico correctional facility, directed Ausborn to fill out paperwork at the Probation and Parole Office of the New Mexico State Court that changed his parole status to that of a sex offender.   See Amended Complaint ¶ 77, at 21-22.   Ausborn was directed to the Sex Offender Unit of the Probation and Parole Office in March, 2009, where he registered as a sex offender. See Amended Complaint ¶ 78, at 22.   Ausborn served the special conditions of parole for sex offenders as directed by Barela and Defendant Troy Ruplinger, NMDC Probation and Parole Division parole officer, without any violations, he completed his parole on March 18, 2010, but he is still required to register as a sex offender.   See Amended Complaint ¶¶ 81-83, at 23.

## PROCEDURAL BACKGROUND

-10-

On February 1, 2010, Brown filed his Complaint, pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.   See Complaint.   Ausborn was added in May, 2012, when the Plaintiffs filed their First Amended Complaint.   See Amended Complaint ¶ 4, at 2.

1.    **The Plaintiffs' Discovery Requests, and the Defendants' Answers and Objections.**

Plaintiffs served their First Set of Requests for Admission, Interrogatories, and Requests for Production to the Defendants on July 30, 2012.   See Certificate of Service, July 30, 2012 (Doc. 95)("First Set of Requests"). Houston objects to many of the Interrogatories, Requests for Production, and Requests for Admission.   Interrogatory No. 6 requests the following:

> Please identify the legal name and any other names or aliases, date of birth, current address, place of employment, and date and place of conviction(s) for each individual who appears in the Bernalillo County Sheriff's Office's (BCSO's) records as a person who is a "sex offender" or is required to register as a sex offender between January 1, 2007, and the present based in whole or in part on a conviction for false imprisonment under NMSA 1978, § 30-4-3, or second-degree kidnapping under NMSA 1978, § § 30-4-1(B).

Defendant Houston's Answers to Plaintiff's First Set of Discovery Requests, at 4, filed September 28, 2012 (Doc. 110-1)("Houston's Response to First Set of Requests"). Houston submitted the following response: "The Defendants object to this Interrogatory as unduly burdensome, overbroad and harassing and seeking information that is not relevant, nor discoverable, nor reasonably calculated to lead to the discovery of admissible evidence in that it seeks information that is not at issue in this matter."   Houston's Response to First Set of Requests at 4.   Request for Production No. 1 requests: "Please produce the records on which the Bernalillo County Sheriff's Office or its employees or agents based the decision to identify the individuals listed in your answer to Interrogatory No. 6 above as a 'sex offender' or a person who is required to register as a

'sex offender.'"   Houston's Response to First Set of Requests at 4.   Houston responded: "The Defendants object to this Request as unduly burdensome, overbroad and harassing and seeking information that is not relevant, nor discoverable, nor reasonably calculated to lead to the discovery of admissible evidence in that it seeks information that is not at issue in this matter." Houston's Response to First Set of Requests at 4.   Request for Production No. 6 requests: "Please produce the principal and material records (not otherwise disclosed in your preceding responses) on which you relied in answering Interrogatory Nos. 1 through 6 above."   Houston's Response to First Set of Requests at 5.   Houston's response is the same as his response to Request for Production No. 1, that the request is unduly burdensome and overbroad.   <u>See</u> Houston's Response to First Set of Requests at 5.

Houston objects to four out of the five requests for admission, because he contends that the Requests all call for a legal conclusion.   <u>See</u> Houston's Response to First Set of Requests at 2. He answers summarily that "[t]he Sheriff's duties are set forth in NMSA 1978, 4-41-2." Houston's Response to First Set of Requests at 2.   Request for Admission No. 1 provides: "Admit that in your official capacity as Bernalillo County Sheriff, your duty or authority includes maintaining a local registry of 'sex offenders' in your jurisdiction who are required to register pursuant to the provisions of New Mexico's Sex Offender Registration and Notification Act." Houston's Response to First Set of Requests at 2.   Request for Admission No. 2 states: "Admit that in your official capacity as Bernalillo County Sheriff, your duty or authority includes administration and supervision of the Metropolitan Detention Center as well as the performance and execution of the Bernalillo County Sheriff's Office's (BCSO's) contracts with the New Mexico Department of Corrections."   Houston's Response to First Set of Requests at 2.   Request for Admission No. 3 provides: "Admit that in your official capacity as Bernalillo County Sheriff,

your duty or authority includes ensuring that the Bernalillo County Sheriff's Office's (BCSO's) policies are in compliance with relevant state and federal laws, including the Fourteenth Amendment to the United States Constitution."   Houston's Response to First Set of Requests at 2. Request for Admission No. 4 states: "Admit that the Bernalillo County Sheriff's Office relies and has relied on information provided by the New Mexico Department of Corrections to determine which individuals are required to register as 'sex offenders.'"[2]   Houston's Response to First Set of Requests at 2.

Eden also objects to multiple Interrogatories, Requests for Production and Requests for Admission.   Interrogatory No. 5 requests:

> Please identify the names, job titles, business addresses, and business telephone numbers of each person employed by the New Mexico Department of Public Safety between January 1, 2007, and the present whose assigned job duties include(d) determining or deciding whether an individual should appear in the Department's records as a person who is a "sex offender" or who is required to register as a "sex offender," or supervising other employees who were assigned those duties during that period; and for each person so identified, please describe that person's principal and material duties with respect to sex-offender registration and identify the time period during which they were assigned those duties.

Defendant Secretary Gordon E. Eden, Jr.'s Response to Plaintiff Ray Brown's First Set of Requests for Admission, Interrogatories, and Requests for Production at 10, filed September 28, 2012 (Doc. 110-2)("Eden's Response to First Set of Requests").   Eden objects to Interrogatory No. 5:

> [I]t is overly broad and unduly burdensome. The Interrogatory is not limited to the persons who carried out the above duties with respect to Plaintiffs.   Subject to and without waiving the above objections, Secretary Eden states that Regina Chacon determined that Plaintiffs needed to serve probation in the sex offender unit.

---

[2] Houston does not object to Request for Admission No. 5, which is exactly the same as Request for Admission No. 4, except that the phrase "New Mexico Department of Corrections" in Request for Admission No. 4 is replaced in Request for Admission No. 5 with "New Mexico Department of Public Safety."   Houston's Response to First Set of Requests at 2.

Eden's Response to First Set of Requests at 10.   Interrogatory No. 6, requests:

> Please identify the legal name and any other names or aliases, date of birth, current address, place of employment, and date and place of conviction(s) for each individual who appears in the New Mexico Department of Safety's records as a person who is a "sex offender" or is required to register as a sex offender between January 1, 2007, and the present based in whole or in part on a conviction for false imprisonment under NMSA 1978, § 30-4-3, or second-degree kidnapping under NMSA 1978, § § 30-4-1(B).

Eden's Response to First Set of Requests at 10.   Eden objects to this Interrogatory on the grounds that it is "overly broad, unduly burdensome, irrelevant, and not reasonably calculated to lead to admissible evidence.   The identities of other persons who registered as sex offenders have no bearing on the specific claims of Plaintiffs."   Eden's Response to First Set of Requests at 11.

Eden objects to Requests for Production Nos. 1-4, asserting that the requests "seek[] proprietary N[ational] C[riminal] I[nformation] [System] documents referring to Plaintiffs that he has no authority to produce.   Subject to, and without waiving this Objection, responsive documents are included herewith."   Eden's Response to First Set of Requests at 13-15.   Request for Production No. 2, states: "Please produce the records in the possession, custody, or control of the New Mexico Department of Public Safety which identify Plaintiff Ray Brown as a person who is a 'sex offender' or who is required to register as a 'sex offender' between January 1, 2009, and the present."   Eden's Response to First Set of Requests at 13.   Request for Production No. 3, requests "the records in the possession, custody, or control of the New Mexico Department of Public Safety which identify Plaintiff Kenji Ausborn as a person who is a 'sex offender' or who is required to register as a 'sex offender' between January 1, 2009, and the present."   Eden's Response to First Set of Requests at 14.   Request for Production No. 4, requests:

> the records, if any, which the New Mexico Department of Public Safety received from the New Mexico Department of Corrections or the Bernalillo County

Sheriff's Office for purposes of causing, directing, or facilitating the registration of Plaintiffs Ray Brown and Kenji Ausborn as "sex offenders" between January 1, 2009, and the present.

Eden's Response to First Set of Requests at 15.   Eden objects to Requests for Admission Nos. 1 and 2 on grounds that they call for a legal conclusion.   See Eden's Response to First Set of Requests at 2-3.   Request for Admission No. 1, states: "Admit that in your official capacity as Secretary of the New Mexico Department of Public Safety, your duty or authority includes administering and implementing the Department's Sex Offender Registry and related programs for information technology and criminal-history records used in statewide law-enforcement support, as described on the Department's website: http://www.dps.nm.org."   Eden's Response to First Set of Requests at 2.   Request for Admission No. 2 provides: "Admit that in your official capacity as Secretary of the New Mexico Department of Corrections, your duty or authority includes ensuring that the Department's policies are in compliance with relevant state and federal laws, including the Fourteenth Amendment to the United States Constitution."   Eden's Response to First Set of Requests at 3.

Marcantel objects to the Plaintiffs' discovery requests also.   He, like Houston, objects to Requests for Admission Nos. 1 and 2 on the grounds that they call for a legal conclusion, and replies that "[t]he duties of   the New Mexico Secretary of Corrections are described in N.M.S.A. § 9-3-5."   Defendant Secretary Gregg Marcantel's Response to Plaintiff Ray Brown's First Set of Requests for Admission, Interrogatories, and Requests for Production at 2, filed September 28, 2012 (Doc. 110-3)("Marcantel's Response to First Set of Requests").   Request for Admission No. 1, provides:

Admit that in your official capacity as Secretary of the New Mexico Department of Corrections, your duty or authority includes determining the content of the current versions of New Mexico Corrections Department Policy Nos. CD-040900,

CD-040901, CD-053200, CD-053201, and CD-053202 as they appear on the New Mexico Corrections Department website: http://www.corrections.state.nm.us/policies/intro.html.

Marcantel's Response to First Set of Requests at 2.   Request for Admission No. 2, requests:

Admit that in your official capacity as Secretary of the New Mexico Department of Corrections, your duty or authority includes ensuring that New Mexico Corrections Department Policy Nos. CD-040900, CD-040901, CD-053200, CD-053201, and CD-053202 are in compliance with relevant state and federal laws, including the Fourteenth Amendment to the United States Constitution.

Marcantel's Response to First Set of Requests at 3.   Marcantel objects to Interrogatories Nos. 2, 3, 4, and 5 as being "overly broad, unduly burdensome, irrelevant, and not reasonably calculated to lead to admissible evidence."   Marcantel's Response to First Set of Requests at 3.   Interrogatory No. 5 requests the following:

Please identify the legal name and any other names or aliases, date of birth, current address, place of employment, and date and place of conviction(s) for each individual who registered or was required to register as a sex offender under New Mexico Corrections Department Policy Nos. CD-040900, CD-040901, CD-053200, CD-053201, or CD-053202 in Region II of the Department's Probation and Parole Division between January 1, 2007, and the present based in whole or in part on a conviction for false imprisonment under NMSA 1978, 30-4-3, or a conviction for second-degree kidnapping under NMSA 1978, 930-4-1(B).

Marcantel's Response to First Set of Requests, at 10.   Marcantel asserts: "The identities of other persons who registered as sex offenders have no bearing on the specific claims of Plaintiffs." Marcantel's Response to First Set of Requests at 10.   Marcantel cites to this answer to Interrogatory No. 5 in objecting to Requests for Production Nos. 1 and 2 as overbroad and unduly burdensome.   See Marcantel's Response to First Set of Requests at 13-14.   Request for Production No. 1, requests:

Please produce the records on which the New Mexico Department of Corrections or its employees or agents based the decision to require the individuals identified in your answer to Interrogatory No. 5 above to be registered, notified, tracked, or supervised as "sex offenders" under New Mexico Corrections Department Policy

Nos. CD-040900, CD-040901, CD-053200, CD-053201, or CD-053202.

Marcantel's Response to First Set of Requests at 13.   Request for Production No. 2 to Marcantel states:

> Please produce the records, if any, which the New Mexico Department of Corrections or its employees transmitted or disclosed to the Bernalillo County Sheriff's Office and/or the New Mexico Department of Public Safety for purposes of causing, directing, or facilitating the registration, notification, tracking, or supervision of the individuals identified in your answers to Interrogatory No.5 above as "sex offenders" under New Mexico Corrections Department Policy Nos. CD-040900, CD-040901, CD-053200, CD-053201, or CD-053202.

Marcantel's Response to First Set of Requests at 14.

Barela and Montoya both object to the Plaintiffs' Interrogatory No. 4 to them, which, similar to Marcantel's Interrogatory No. 5, asks them the identify any individual other than the Plaintiffs whom they directed to register as a sex offender, or undergo supervision as a sex offender "based in whole or in part on a conviction for false imprisonment under NMSA 1978, []30-4-3, or a conviction for second-degree kidnapping under NMSA 1978, 930-4-1(B)."   Susan Barela's Response to Plaintiff Ray Brown's First Set of Requests for Admissions, Interrogatories, and Requests for Production at 7, filed September 28, 2012 (Doc. 110-4)("Barela's Response to First Set of Requests"); Defendant Officer Daniel Montoya's Response to Plaintiff Ray Brown's First Set of Requests for Admission, Interrogatories, and Requests for Production, at 7, filed September 28, 2012 (Doc. 110-5)("Montoya's Response to First Set of Requests").   They both object that the Interrogatories asking for information about others that they registered as sex offenders are "overly broad, unduly burdensome, irrelevant, and not reasonably calculated to lead to admissible evidence.   The identities of other persons who registered as sex offenders have no bearing on the specific claims of Plaintiffs."   Barela's Response to First Set of Requests at 7; Montoya's Response to First Set of Requests at 7.

2.     **The Motion to Compel**.

On September 28, 2012, the Plaintiffs filed their Motion to Compel.   The Plaintiffs move

the Court, pursuant to rule 37 of the Federal Rules of Civil Procedure and D.N.M. LR-Civ. 37.1.

The Plaintiffs seek to compel answers and responses to their First Set of Requests.   See Motion to

Compel at 1.

In their Motion to Compel, the Plaintiffs first assert that the twenty-one-day deadline for

informal resolution of discovery disputes specified in D.N.M. LR-Civ. 26.6 runs from the date

when the Defendants completed the production specified in their response and that their motion is

therefore timely filed.   See Motion to Compel at 4-5. The Plaintiffs then address all of the

Defendants' objections to the Plaintiffs' first set of discovery requests by organizing them into

three arguments: (i) the Defendants' improper use of blanket objections, see Motion to Compel at

6-8; (ii) the Defendants' refusal to provide information about non-parties, see Motion to Compel at

8-14; and (iii) the Defendants' objections to the Plaintiffs' requests for Requests for Admission on

grounds that they call for legal conclusions, see Motion to Compel at 15-16.   The Plaintiffs assert

that Houston's objections to the Plaintiffs' Interrogatory No. 6, and Requests for Production Nos. 1

and 6, do not explain, nor provide authority supporting, the contention that the Plaintiffs'

discovery requests are unduly burdensome, overbroad, and harassing.   See Motion to Compel at

6.   Second, the Plaintiffs assert that Eden's objection to Interrogatory No. 5 states an objection to

providing information regarding individuals only other than Plaintiffs, but does not answer the

question with regard to the Plaintiffs.   See Motion to Compel at 7.    Interrogatory No. 5 requests

information regarding employees who made the determination whether an individual should be

listed in the New Mexico Department of Public Safety's records as a "sex offender."   Motion to

Compel at 7-8; Interrogatory No. 5.  Plaintiffs state that, if Regina Chacon, a Department of

Public Safety records office employee, determined that their sex offender status meant that they

needed to serve probation, Eden then should have answered the rest of the interrogatory regarding

her. <u>See</u> Motion to Compel at 7. Third, the Plaintiffs state that Eden's objections to Requests for

Production Nos. 1, 2, 3, 4, and 6 request that he has no authority to produce National Criminal

Information System ("NCIC") documents referring to the Plaintiffs. <u>See</u> Motion to Compel at 7.

The Plaintiffs assert that Eden needs to identify specific legal authority supporting his assertion

that he is not authorized to produce the documents and to identify who has the authority to do so.

<u>See</u> Motion to Compel at 7. The Plaintiffs also request a log listing the documents that Eden is

withholding. <u>See</u> Motion to Compel at 8.

The Plaintiffs also assert that the all Defendants object to many of their discovery requests

on the grounds that they are not required to provide information about sex-offender classifications

of any individuals other than the Plaintiffs, or information about government employees who are

not defendants in this case. <u>See</u> Motion to Compel at 8. The Plaintiffs contend that all

Defendants have misinterpreted the scope of discovery under rule 26(b)(1) of the Federal Rules of

Civil Procedure. <u>See</u> Motion to Compel at 9. The Plaintiffs rely on the Advisory Committee

comments to the 2000 Amendment, which state:

> A variety of types of information not directly pertinent to the incident in suit could
> be relevant to the claims or defenses raised in a given action. For example, other
> incidents of the same type, or involving the same product, could be properly
> discoverable under the revised standard. Information about organizational
> arrangements or filing systems of a party could be discoverable if likely to yield or
> lead to the discovery of admissible information.

Motion to Compel at 9 (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's comments to the

2000 Amendment). According to the Plaintiffs, the material requested is information about other

individuals convicted for false imprisonment or second-degree kidnaping, and classified as sex

offenders for purposes of SORNA registration, probation or parole, and, thus, contains "incidents of the same type" arising from the same policy.   Motion to Compel at 10.   In addition, the Plaintiffs assert that the information requested is "organizational arrangements or filing systems of a party," which is information about the sources of records on which classifications were based and who provided the supervision and instruction to Defendants.   Motion to Compel at 10.   The Plaintiffs assert that the requested information is not unduly burdensome, because it is directed at officials who have a duty to disclose the information under New Mexico's Inspection of Public Records Act, N.M.S.A. 1978 §§ 14-2-1 to 14-2-12 ("Public Records Act").   Motion to Compel at 14.

According to the Plaintiffs, it is permissible to request an admission from an official how a certain contract, statute, or regulation applies to him.   See Motion to Compel at 15.   The Plaintiffs also assert that the Court should overrule the Defendants' objections to requests for admission identifying all Defendants' job duties on the grounds that these requests call for a legal conclusion.   See Motion to Compel at 15.   The Plaintiffs state that rule 36 expressly allows for a request for admission ("RFA") that involves an opinion regarding the application of law to fact. See Motion to Compel at 15 (citing Miller v. Holzmann, 240 F.R.D. 1, 5 (D.D.C. 2006)).   The Plaintiffs request that the Court compel all the Defendants to answer and respond to the discovery requests.   See Motion to Compel at 15.

Houston filed his Response to Plaintiffs' Motion to Compel on October 14, 2012.   See Doc. 113 ("Houston's Response").   Houston asserts that the Motion to Compel is untimely under the Court's local rules and requested fourteen days to address the motion on the merits if the Court should so determine.   See Houston's Response at 3.

The State Defendants filed their State Defendants' Response to Plaintiffs' Motion to

Compel Answers and Responses to Plaintiffs' First Set of RFAs, Interrogatories, and Requests for Production to Defendants Montoya, Barela, Houston, Marcantel, and Eden on October 14, 2012. <u>See</u> Doc. 114 ("State Defendants' Response"). The State Defendants assert that the 2000 Amendments to rule 26(b)(1) narrowed the scope of discovery, and, therefore, all of the State Defendants' objections to the Plaintiffs discovery requests are appropriate. <u>See</u> State Defendants' Response at 3. The State Defendants argue that Eden's overbreadth objection to Interrogatory No. 5, requesting the identity of every person at NMDPS, which has been responsible for identifying people as sex offenders since 2007 is appropriate. <u>See</u> State Defendants' Response at 3-4. According to the State Defendants, the Plaintiffs' allegations against NMDPS and Eden are limited to injunctive relief removing them from the sex offender registry; therefore, it is necessary only to determine whether the Plaintiffs' sex offender classifications are constitutional and whether they will continue to be classified as such. <u>See</u> State Defendants' Response at 4. The State Defendants also assert that Eden's objections to Requests for Production Nos. 1, 2, 3, 4, and 6 are not "boilerplate" objections; rather, Eden described the specific reason why the documents are not discoverable. State Defendants' Response at 4.

The State Defendants also assert that their objections to the overbreadth of the requests regarding all people required to register as sex offenders for false imprisonment or kidnaping are appropriate, because the requests encompass information that is immaterial. <u>See</u> State Defendants' Response at 5. According to the State Defendants, the Plaintiffs are attempting to gather information regarding other, potential plaintiffs, which the Advisory Committee Notes to the 2000 Amendments states is not permitted. <u>See</u> State Defendants' Response at 5. The State Defendants also assert that information regarding other persons classified as sex offenders is irrelevant to the chain of command. <u>See</u> State Defendants' Response at 6.

-21-

According to the State Defendants, the Plaintiffs' Motion to Compel Responses to Requests of Admission is inappropriate.   See State Defendants' Response at 8.   The State Defendants argue that RFAs Nos. 1 and 2 do not ask for an appropriate application of law to facts, but ask pure questions of law.   See State Defendants' Response at 8.   In addition, the State Defendants argue that Eden and Marcantel object to RFA No. 2 as irrelevant, that the Plaintiffs did not address the irrelevance objection in their Motion to Compel, and that the time for addressing the objections has passed.   See State Defendants' Response at 8-9; District of D.N.M.LR-Civ. 26.6.   According to the State Defendants, the Plaintiffs are deemed to have consented to this objection, and the Court should compel Eden and Marcantel to answer these Requests.   See State Defendants' Response at 9.   The State Defendants request that the Court deny the Plaintiffs' Motion to Compel in its entirety.   See State Defendants' Response at 9.

On October 29, 2012, the Plaintiffs filed their Reply to Responses to Motion to Compel. See Doc. 116 ("Reply").   The Plaintiffs assert that the twenty-one-day deadline stated in D.N.M. LR-Civ 26.6 should not be interpreted as unduly rigid, which would run contrary to the purposes of rule 1 of the Federal Rules of Civil Procedure's guarantee of a just, speedy, and inexpensive determination, and the discovery rules' purpose of advancing truth.   See Reply at 1-2. According to the Plaintiffs, their discovery requests to Defendants were interrelated and served at the same time; therefore, it was reasonable to wait to file a single discovery motion for all of the Defendants' responses and for the documents that Houston promised.   See Reply at 2-3.   The Plaintiffs also assert that the Court should deny Houston's request for an opportunity to respond to their motion substantively.   See Reply at 4.

Addressing the merits of the Motion to Compel, the Plaintiffs assert that the discovery requests are relevant to the Defendants' qualified and legislative immunity defenses, because they

-22-

seek evidence that the Defendants exceeded the legislative sphere, into that of administration and enforcement, identify the proper parties, and find the chain of command.   See Reply at 4-5.   The Plaintiffs also assert that asking the Defendants whether they participated in deciding to classify them as sex offenders in the course of their employment does not require a legal conclusion, but is a question of fact.   See Reply at 5.

The Plaintiffs assert that knowing whether other individuals have been classified as sex offenders from second degree kidnapping or false-imprisonment convictions is relevant to their current claims.   See Reply at 5.   According to the Plaintiffs, rule 404(b) of the Federal Rules of Evidence permits this information for purposes of proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.   See Reply at 5. The Plaintiffs assert that the court should allow them discovery of all personnel involved in implementing the consequences of sex offender classification.   See Reply at 5.

According to the Plaintiffs, the NMDPS Secretary can be held liable under 42 U.S.C. § 1983 if he made the ultimate decision to classify the Plaintiffs as sex offenders.   See Reply at 6-7. The Plaintiffs also argue that rule 23 allows discovery to identify potential members of the same class.   See Reply at 7.   Finally, the Plaintiffs argue that the Court should not allow the Defendants to avoid discovery by stating that they may be able to obtain the information through the Public Records Act.   See Reply at 8.   The Plaintiffs request that the Court grant their Motion to Compel and require the Defendants answer the discovery requests within fourteen days.   See Reply at 9.

### 3.   The Hearing on the Motion To Compel.

On November 16, 2012, the Court held a hearing.   At the hearing, the Court first addressed whether the Plaintiffs had filed the Motion to Compel after D.N.M. L.R.-Civ 26.6's

twenty-one-day deadline and granted an extension for the Motion to Compel.   Liberty Court
Player at 10:44:58-45:45 (Nov. 16, 2012)(Court)("Liberty").   The Court explained that the delay
was not substantial and did not unduly prejudice the Defendants.   See Liberty at 10:44:58-45:45
(Court).

        The Plaintiffs argued that the first issue is the extent to which they can discover other
individuals who are required to register as sex offenders.   See Liberty at 10:45:52-46:38
(Leonard).   The Plaintiffs asserted that identifying other individuals required to register as sex
offenders based on false imprisonment and second-degree kidnapping convictions is relevant to
whether the Defendants follow the same procedure with other individuals, and to determine who
makes the decision to classify as sex offenders.   See Liberty at 10:50:09-52:57 (Leonard).   The
Plaintiffs also asserted that this information is relevant to their request for declaratory and
injunctive relief to determine if there has been a change in policy or practice over time with respect
to other offenders, and if the Plaintiffs will still be required to register as sex offenders.   See
Liberty at 10:47:09-49:04 (Leonard).   The Plaintiffs asserted they need to prove classifying them
as sex offenders was an intentional act for their Due Process claims, so the Plaintiffs need the
information to prove it was not a mistake or clerical error.   See Liberty at 10:47:09-49:04
(Leonard).   Plaintiffs asserted the information is relevant in order to determine what is routine or
standard practice in the office.   See Liberty at 10:47:09-49:04 (Leonard).   The Plaintiffs would
like to discover how Defendants determine a victim's age when it has not been admitted in a prior
criminal proceeding, for other individuals who have the same conviction or basic issue, to
determine if Defendants follow the same procedure with other individuals.   See Liberty at
10:47:09-49:04 (Leonard).   The Plaintiffs also stated that the discovery of other individuals' files
could lead to the amendment of the Complaint either to add additional defendants or plaintiffs, but

determining there is a basis for going forward as a class action or joinder is not necessarily a fishing expedition, because they are narrowly focused on a class of similarly situated individuals. See Liberty at 10:50:09-52:57 (Leonard).

The State Defendants replied that the identity of other individuals required to register is irrelevant to the question who required the Plaintiffs to register as sex offenders.   See Liberty at 10:56:33-57:45 (Marcus).   According to State Defendants, the request regarding other potential plaintiffs is exactly the type of discovery that the 2000 Amendment to rule 26 of the Federal Rule of Civil Procedure, which changed the wording from "subject matter" to "claims or defenses," was designed to prevent, and cases have said the reason the rule was changed was to prevent the sort of fishing expedition that the Plaintiffs are seeking.   See Liberty at 10:53:33-54:46 (Marcus).   The State Defendants also argued that, regarding the declaratory and injunctive relief issues, those policies can be discovered directly; Plaintiffs can ask if these policies are still in effect.   See Liberty at 10:53:33-54:46 (Marcus).   The NMDC's Policies are available online -- they are public information.   See Liberty at 10:53:33-54:46 (Marcus).   Plaintiffs do not need to find out about other people who may or may not have been required to register as sex offenders.   See Liberty at 10:53:33-54:46 (Marcus).   The State Defendants also asserted, regarding the issue of intent, that no one has raised the defense that the two Plaintiffs were required to register as sex offenders by accident.   See Liberty at 10:54:52-56:32 (Marcus).   The State Defendants asserted that they have cooperated with discovery for the people who have been responsible for the decision to name the two Plaintiffs as sex offenders, but that information about other individuals is irrelevant because it does not help resolve the question of who required these particular individuals to register as sex offenders.   See Liberty at 10:56:33-57:45 (Marcus).   The Court asked whether the records that the Plaintiffs are asking for is not a large amount of records, because, rather than requiring

production of all records, the Plaintiffs are seeking records of only those whom the State Defendants are reclassifying outside of the court classifications. See Liberty 10:57:48-58:19 (Court).   The State Defendants replied that the Plaintiffs are asking for the identities of all persons asked to register as sex offenders generally and not only of those whom the court system designates.  See Liberty at 10:58:19-59:02 (Marcus).   The Court asked how big of a group that list would be, and the State Defendants replied that they did not have that information, but, based on experience and knowledge of the case, the universe of possible people would likely be substantial -- possibly as high as or more than a hundred people.   See Liberty at 10:59:02-59:45. (Court, Marcus).

The Court stated that it appears there are many people involved in this process, and that the Court should thus allow Plaintiffs to view some files to determine whether the correct individuals are named as defendants and so that the Plaintiffs can find what policies are followed for requiring similar individuals to register as sex offenders.   See Liberty at 11:19:11-19:46 (Court).   The Court requested that the Defendants estimate the size of the group of individuals convicted of false imprisonment and second-degree kidnapping required to register as sex offenders, and produce that good-faith estimate to the Plaintiffs and the Court.   See Liberty at 11:19:46-20:54 (Court). The Court ordered both the State and Houston to produce ten files for false imprisonment and ten files for second-degree kidnapping, from January 1, 2008, to December 31, 2010, and limited production to Bernalillo County, equating to twenty files from the state and twenty from the county.   See Liberty at 11:20:54-21:33 (Court).   The Court noted its belief this production would give the Plaintiffs a representative sample.   If for what the Plaintiffs are looking is in these records, then they may be able to find them in the ten records each.   If there is not anything relevant in the twenty files then there likely will not be anything relevant in one hundred files.

See Liberty at 11:21:33-22:28 (Court).

The State Defendants agreed to provide an estimate of the number of records of both the second-degree kidnapping and the false imprisonment cases that the Plaintiffs seek, and agreed to produce twenty files, as long as they were permitted to redact the names and addresses of persons in the records:

> As far as giving you the numbers, we could give you the numbers and if -- if they were required to register.   I still believe that any additional files would constitute a fishing expedition, because they're not relevant to any of the issues the Plaintiffs raise, because there is no more supervisory liability claim in the Amended Complaint. So that part is out. As far as producing files, I would suggest that perhaps we could redact the names and addresses as a way of guaranteeing that it won't be used as a fishing expedition.   That would be something that I could throw out.

Liberty at 11:22:30-23:22 (Marcus).   Houston responded: "I would have no problem with that, Your Honor."   Liberty at 11:23:59-24:18 (Martinez).   The Court allowed the Defendants to redact the names and addresses of the individuals if they wished.   See Liberty at 11:28:19-29:04 (Court).   If that redaction proves too burdensome, the Court stated that the parties may ask the court to order the files produced under a confidentiality order stating for attorneys' eyes only.   See Liberty at 11:28:14-29:04 (Court).

The second issue the Plaintiffs argued was the discovery responses regarding the chain of command within each agency.   See Liberty at 11:29:06-30:20 (Leonard).   Houston replied that they could not determine every deputy working at substations on registration day, but could provide the chain of command for the person who maintains the database.   See Liberty at 11:31:36-32:28 (Martinez).   The Court denied the portion of the motion regarding the deputies and intake personnel without prejudice, but ordered the Houston to provide a chain-of-command organizational chart illustrating to whom the intake personnel report.   See Liberty at

-27-

11:36:40-37:20 (Court).  The State Defendants asserted that chain-of-command information is being provided through discovery, and that the only objection was to one interrogatory to Eden, because it concerned potential plaintiffs other than the named Plaintiffs in the case.  See Liberty at 11:30:32-31:34 (Marcus).  The Court asked whether the State Defendants would agree to the State Defendants amending their answers once, making a good-faith effort to find out who is in the chain of command, and, if later the Plaintiffs want it updated, the Court will likely grant that request.  See Liberty at 11:36:40-37:20 (Court).  The parties all agreed to the Court's proposal. See Liberty at 11:31:36-38:22 (Marcus, Martinez, Court).

The last issue addressed at the hearing was the request that the Defendants admit that their job duty is to develop policy for deciding to classify people as sex offenders.  See Liberty at 11:38:23-40:22 (Leonard).  The Plaintiffs argued that their intent was not to ask for legal conclusions, but to know factually what each individual defendant does in his or her job.  See Liberty at 38:23-40:22 (Leonard).  The State Defendants responded that cabinet secretaries' duties are statutorily created, and, therefore, the question requires a legal conclusion.  See Liberty at 11:40:25-41:28 (Marcus).  The State Defendants also argued that, because the Plaintiffs do not have a supervisory liability claim, it is irrelevant who wrote the policies.  See Liberty at 11:40:25-41:28 (Marcus).

## RELEVANT LAW REGARDING DISCOVERY

The proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Information is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1). Federal courts have held that the scope of discovery under rule 26 is broad.  See Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1520 (10th Cir. 1995); Sanchez v. Matta, 229 F.R.D. 649, 654

(D.N.M. 2004)(Browning, J.)("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve the full disclosure of all potentially relevant information."). The federal discovery rules reflect the courts' and Congress' recognition that "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Hickman v. Taylor, 329 U.S. 495, 507 (1947). As a result, rule 26 "contemplates discovery into any matter that bears on or that reasonably could lead to other matter[s] that could bear on any issue that is or may be raised in a case." Anaya v. CBS Broad., Inc., 251 F.R.D. 645, 649-50 (D.N.M. 2007)(Browning, J.)(internal quotation marks omitted).

A district court is not, however, "required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." McGee v. Hayes, 43 F. App'x 214, 217 (10th Cir. 2002)(unpublished).[3] See Tottenham v. Trans World Gaming Corp., No. 00 Civ. 7697, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002)(Knapp, J.)("Discovery, however, is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." (internal quotation marks omitted)); Hardrick v. Legal Servs. Corp., 96 F.R.D. 617, 618 (D.D.C. 1983)(noting that courts do, and should, remain concerned about "fishing expeditions, discovery abuse and inordinate expense

---

[3] McGee v. Hayes is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ('Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court finds that McGee v. Hayes has persuasive value with respect to a material issue, and will assist the Court in its disposition of this memorandum opinion and order.

involved in overbroad and far-ranging discovery requests" (internal quotation marks omitted)). "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant."   Gomez v. Martin Marietta Corp., 50 F.3d at 1520 (internal quotation marks omitted).

Courts have recognized that, while it is true that relevance in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue."   Zenith Elecs. Corp. v. Exzec, Inc., No. 93 C 5041, 1998 WL 9181, at *2 (N.D. Ill. Jan. 5, 1998).   Furthermore, the information must be "reasonably calculated to lead to the discovery of admissible evidence." Zenith Elecs. Corp. v. Exzec, Inc., 1998 WL 9181, at *2.   Courts have also recognized that "[t]he legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery."   Zenith Elecs. Corp. v. Exzec, Inc., 1998 WL 9181 at *2 (internal quotation marks omitted).

Rule 36(a)(1) allows for a party to serve on any other party a request that the part admit "the truth of any matters within the scope of Rule 26(b)(1) relating to . . . facts, the application of law to fact, or opinions about either . . . ."   Fed. R. Civ. P. 36(a)(1)(A).   RFAs "expedite trials by establishing as true certain material facts of a case without the necessity of formal proof at trial." Keen v. Detroit Diesel Allison, 569 F.2d 547, 554 (10th Cir. 1978)(citation omitted).   The 1970 amendment to rule 36(a) deleted "relevant matters of fact," thus allowing requests applying law to fact.   Fed .R. Civ. P. 36, advisory committee note to the 1970 amendments ("As revised, the subdivision provides that a request may be made to admit any matters within the scope of Rule 26(b) that relate to statements or opinions of fact or of the application of law to fact.   It thereby eliminates the requirement that the matters be 'of fact.'").   However, "[t]he amended provision

does not authorize requests for admissions of law unrelated to the facts of the case."
Stark-Romero v. Nat'l R.R. Passenger Co. (AMTRAK), 275 F.R.D. 551, 554 (D.N.M. 2011)
(Browning, J.)(quoting Fed .R. Civ. P. 36, advisory committee note to the 1970 amendments).

     In Stark-Romero v. Nat'l R.R. Passenger Co. (AMTRAK), the request asked for an
admission that the New Mexico Department of Transportation was responsible for administering
the federal grade-crossing improvement program in New Mexico.   See 275 F.R.D. at 557.   The
Court held that this requirement sought an application of law to fact, rather than the answer to a
pure matter of law; thus, the Court concluded that the plaintiffs were required to admit or to
specifically deny the RFA, or to state in detail why they could not truthfully admit or deny it.   See
275 F.R.D. at 558.   The Court reasoned that the request "is closer to a request seeking application
of law to the facts of the case. It is trying to narrow the range of entities that -- factually --
administer a particular program in New Mexico; it does not seek the admission of an abstract
question of law."   275 F.R.D. at 558.

     "[A] respondent must, if he or she cannot admit or deny [an RFA], state in detail why not."
Stark-Romero v. Nat'l R.R. Passenger Co. (AMTRAK), 275 F.R.D. at 555.   Rule 36(a)(4)
provides:

> If a matter is not admitted, the answer must specifically deny it or state in detail
> why the answering party cannot truthfully admit or deny it. A denial must fairly
> respond to the substance of the matter; and when good faith requires that a party
> qualify an answer or deny only a part of a matter, the answer must specify the part
> admitted and qualify or deny the rest. The answering party may assert lack of
> knowledge or information as a reason for failing to admit or deny only if the party
> states that it has made reasonable inquiry and that the information it knows or can
> readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36(a)(4).   There is arguably a tension between the first sentence of rule 36(a)(4)
and the third sentence.   The first sentence suggests that the answer must describe in detail what

efforts have been made to answer the particular request for admission ("RFA"); the third sentence suggests that such detail is not necessary and that the answer need only track the third sentence of 36(a)(4).   There thus may be some conflict between rule 36(a)(4)'s requirement that a responding party "state in detail why the answering party cannot truthfully admit or deny" a RFA, and not requiring a responding party to detail the "reasonable inquiry" the party made.   The Court has adopted the view that a simple statement that a party has made a reasonable inquiry, and does not have adequate information to admit or to deny a RFA suffices, and a party may rest on that statement.   See Stark-Romero v. Nat'l R.R. Passenger Co. (AMTRAK), 275 F.R.D. at 554-55. See, e.g., Asea, Inc. v. S. Pac. Transp. Co., 669 F.2d 1242, at 1247 (9th Cir. 1981)("[A] response which fails to admit or deny a proper request for admission does not comply with the requirements of Rule 36(a) if the answering party has not, in fact, made 'reasonable inquiry,' or if information 'readily obtainable' is sufficient to enable him to admit or deny the matter."); Adley Express Co. v. Highway Truck Drivers & Helpers, Local No. 107, 349 F. Supp. 436 (E.D. Pa. 1972)("Under the amended Rule 36, it would appear that a mere statement in the answer that the answering party has made reasonable inquiry and that the information solicited was insufficient to enable him to admit or deny the requested matter will suffice.").

        In all cases, respondents must either admit or specifically deny a request for admission, or state in detail why they cannot truthfully admit or deny it.   See Fed .R. Civ. P. 36(a)(4); Stark-Romero v. Nat'l R.R. Passenger Co. (AMTRAK), 275 F.R.D. at 558.    If respondents are going to say that they cannot answer a request for admission, they have to track the requirements of rule 36(a)(4).   See Fed. R. Civ. P. 36(a)(4).   This requirement means that, if they are going to respond that they cannot truthfully admit or deny the request for admission, because they do not have sufficient information, they must state, consistent with rule 11, "that [they] ha[ve] made

-32-

reasonable inquiry and that the information [they] know[] or can readily obtain is insufficient to enable [them] to admit or deny.'  Fed. R. Civ. P. 36(a)(4).  A reasonable inquiry means that a party has to ask their counsel, and if their counsel knows the answer, they need to use that information to admit or deny.  See Stark-Romero v. Nat'l R.R. Passenger Co. (AMTRAK), 275 F.R.D. at 558; T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc., 174 F.R.D. 38, 43 (S.D.N.Y.1997) ("Reasonable inquiry includes investigation and inquiry of any of defendant's officers, administrators, agents, employees, servants, enlisted or other personnel, who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response." (citation omitted)).

## ANALYSIS

The Court will order the State Defendants and Houston to: (i) produce ten files for individuals convicted of false imprisonment and ten files for individuals convicted of second-degree kidnapping, from January 1, 2008, to December 31, 2010, and limited to Bernalillo County; (ii) produce a chain-of-command chart; and (iii) admit, deny, or state why they cannot admit to the RFA.  The Court will allow the State Defendants and Houston to redact the names and addresses in the false imprisonment and kidnapping files if they wish.  If that redaction will be too burdensome, the Court will order the files produced under a confidentiality order stating that such documents are for attorneys' eyes only.  The Court will permit the Plaintiffs to later request more information if necessary.  The Court will deny the portion of the motion seeking information about the County Deputies and intake personnel without prejudice to the Plaintiffs renewing their request.  The Court will order the State Defendants to amend their answers to the Plaintiffs' Interrogatories asking for the organizational structure of their officer, agency, or political subdivision, making a good faith effort to find out who is in the chain of command, and, if

later the Plaintiffs want the information updated, the Court will likely grant that request.  The

Court will overrule the Defendants' objections to the RFAs.

I.     **THE COURT WILL ORDER HOUSTON AND THE STATE DEFENDANTS TO PRODUCE TEN FILES FOR INDIVIDUALS CONVICTED OF FALSE IMPRISONMENT AND TEN FILES FOR INDIVIDUALS CONVICTED OF SECOND-DEGREE KIDNAPPING, FROM JANUARY 1, 2008 TO DECEMBER 31, 2010, LIMITED TO BERNALILLO COUNTY, WITH NAMES AND ADDRESSES REDACTED.**

The Plaintiffs ask the Court to compel the State and Houston to produce files of other

individuals convicted of false imprisonment and second-degree kidnapping.  See Motion to

Compel at 10.  According to the Plaintiffs, this information is relevant to determine whether

Defendants follow the same procedure with other individuals and to determine who makes that

decision.  See Liberty at 10:50:09-52:57 (Leonard).  At the hearing, the Plaintiffs also asserted

that this information is relevant to their request for declaratory and injunctive relief to determine if

there has been a change in policy or practice over time with respect to other offenders, and if the

Plaintiffs will still be required to register as sex offenders.  See Liberty at 10:47:09-49:04

(Leonard).  The State Defendants argued that this requested information is immaterial to resolve

the question who required the Plaintiffs to register as sex offenders and that the chain-of-command

can be determined more directly.  See State Defendants' Response at 5-6; Liberty at

10:56:33-57:45 (Marcus).

Rule 26 provides for broad and liberal discovery.  See Gomez v. Martin Marietta Corp.,

50 F.3d at 1520; Sanchez v. Matta, 229 F.R.D. at 654.  A request for discovery need only be

reasonably calculated to lead to the discovery of admissible evidence.  See Fed. R. Civ. P.

26(b)(1).  The Court concludes that the requests for files of other individuals convicted of false

imprisonment and second-degree kidnapping are reasonably calculated to lead to the discovery of

-34-

admissible evidence, because it appears that there are many people involved in this process.   The requests are also relevant to determine whether the correct individuals are named as defendants, and what policies are followed.

In Hartnett v. Papa John's Pizza, Inc., No. CIV 10-1105 JB/CG, 2012 WL 3860739, at *2 (D.N.M. Aug. 28, 2012)(Browning, J.), the plaintiff requested personnel files of four employees other than plaintiffs, asserting that the files would allow the plaintiff to compare the defendant's policies and procedures. The defendant objected to the request, stating the term "personnel file" was undefined, and therefore it was overbroad and unduly burdensome.   The defendant also asserted that the information was neither relevant nor would it lead to the discovery of admissible evidence, and it would invade its employees' privacy rights.   See Hartnett v. Papa John's Pizza, Inc., 2012 WL 3860739, at *2.   The Court ordered the defendant to produce the personnel files. See Hartnett v. Papa John's Pizza, Inc., 2012 WL 3860739, at *7.   The Court concluded that the personnel files were reasonably calculated to lead to discovery of admissible evidence, because they could contain examples of the defendant's promotion and discipline practices, and could show how the defendant treated similarly situated employees and if it adhered to its policies.   See Hartnett v. Papa John's Pizza, Inc., 2012 WL 3860739, at *7.   Because the files could contain sensitive information, such as social security numbers, the Court ordered the files subject to a confidentiality agreement.   See Hartnett v. Papa John's Pizza, Inc., 2012 WL 3860739, at *7.

Here, as in Hartnett v. Papa John's Pizza, Inc., the Plaintiffs request files of people other than the Plaintiffs.   In Hartnett v. Papa John's Pizza, Inc., as here, the plaintiffs sought to find examples of the defendants' policies and practices.   In this case, the files of other people convicted of false imprisonment and second-degree kidnapping are reasonably calculated to lead to discovery of admissible evidence, because they can show how the Defendants classified

-35-

similarly situated people and if the Defendants followed their policies.

In <u>Hartnett v. Papa John's Pizza, Inc.</u>, however, the request was limited to only four identified files. Here, there could be hundreds of people convicted of false imprisonment and second-degree kidnapping; therefore, there could be hundreds of files.  To require all of the files produced might be unnecessary and unduly burdensome.   Although rule 26 implements the policy that courts should allow parties broad discovery in hopes that it may lead to relevant, admissible evidence, the discovery rules do not allow movants unlimited discovery.   Moreover, broad discovery does not mean that the Court need give free reign to parties to request from the other side piles of documents, or terabytes of data, when it is uncertain whether the documents or data contains the information the party seeks.   This uncertainty is the situation here.   If the hundreds of records that the Plaintiffs may be requesting contain information relevant to the determination whether any of the Defendants follow the same procedure with other individuals as they did with the Plaintiffs, and to determine who makes that decision, then it is possible ten records will also have such information.   Thus, in the interest of fairness to both parties, and to see if the information the Plaintiffs seek can be found in the files, the Court believes that, before ordering full-blown production of all Defendants' records, requiring them to produce some of the files, but not all, strikes a balance between giving the Plaintiffs an opportunity to discover whether some files contain information that is reasonably calculated to lead to relevant information and denying all discovery because no file may lead to relevant information.

The Court thus believes it should allow the Plaintiffs to access to some files at this early stage of the case.   The Court orders, first, that the Defendants give a good-faith estimate of the size of the group of false imprisonment and second-degree kidnapping convictions required to register as sex offenders, because it will help determine the scope of discoverable material.   When

the Court asked the State Defendants at the hearing to estimate the amount of files, whether in the range of ten or a hundred, the State Defendants stated that they could not give a good-faith estimate, but would think that there could be as many as a hundred.   See Liberty at 10:58:19-59:45 (Marcus).   The Court also orders both the State and Houston to produce ten files for false imprisonment and ten files for second-degree kidnapping, from January 1, 2008, to December 31, 2010, and limited to Bernalillo County.   At the hearing, all parties agreed to this. The State Defendants stated:

> As far as giving you the numbers, we could give you the numbers and if -- if they were required to register.   I still believe that any additional files would constitute a fishing expedition, because they're not relevant to any of the issues the Plaintiffs raise, because there is no more supervisory liability claim in the Amended Complaint. So that part is out. As far as producing files, I would suggest that perhaps we could redact the names and addresses as a way of guaranteeing that it won't be used as a fishing expedition.   That would be something that I could throw out.

Liberty at 11:22:30-23:22 (Marcus).   Houston responded: "I would have no problem with that, Your Honor."   Liberty at 11:23:59-24:18 (Martinez).    If the information that the Plaintiffs seek is in these records, then they may be able to find them in the twenty records produced.   If there is not anything relevant in the twenty files, then there will not be anything relevant in a hundred. This initial, limited production should provide the Plaintiffs with an opportunity, other than their current ability to only look at the written policies, to search through material to determine who is responsible for deciding who will be required to register as a sex offender, if the right Defendants are being sued, and what policies are being followed. This limited, early production allows the Plaintiffs to determine if there is a consistent pattern, without production of every file at this stage.

The State Defendants also argue that the files could be used as a fishing expedition, and ask that they be allowed to produce the files but redact the names and addresses.   As in Hartnett v.

-37-

Papa John's Pizza, Inc., the files here could contain sensitive information; therefore, the Court will permit the Defendants to redact the names and addresses of the individuals if they wish.   If that redaction process is too burdensome, the Court will order them produced under a confidentiality order stating for attorney's eyes only.   The Court therefore grants the Plaintiffs' Motion in part and denies it part, without prejudice to the Plaintiffs later requesting more information if necessary.

Because the Court finds that some requested files of false imprisonment and second-degree kidnapping are reasonably calculated to lead to the discovery of admissible evidence, and because the Court has taken steps to protect individual information, the Court orders that both the State Defendants and Houston give a good-faith[4] estimate of the size of the group of false imprisonment and second-degree kidnapping convictions required to register as sex offenders, and produce ten files for false imprisonment and ten files for second degree kidnapping, from January 1, 2008 to December 31, 2010, and limited to Bernalillo County.   If these twenty files contains the information identifying individuals similarly situated to the Plaintiffs, as the Plaintiffs are seeking, then the Plaintiffs can renew their motion, if appropriate, at a later time to compel the Defendants to produce more or all of the records that they are seeking.

## II.   THE COURT WILL ORDER THE STATE DEFENDANTS AND HOUSTON TO PRODUCE CHAIN-OF-COMMAND CHARTS.

The Plaintiffs ask the Court to compel the State Defendants to provide information regarding employees who made the determination whether an individual should be listed in the NMDPS' records as a "sex offender," including other government employees who are not named

---

[4] A good faith effort here means manually counting or computer sorting the records to find the number of records with the information sought and explaining in detail why any numbers given may not be completely accurate.

defendants in the case.  Motion to Compel at 7-8.  The Plaintiffs assert that the information requested is "organizational arrangements or filing systems of a party," which is information about the sources of records on which classifications were based, and who provided the supervision and instruction to Defendants.  Motion to Compel at 10.  At the hearing, Houston asserted that he could not determine every deputy working at substations on registration day, but could provide the chain-of-command for the person who maintains the database.  See Liberty at 11:31:36-32:28 (Martinez).  The State Defendants, at the hearing, asserted that they are providing chain-of-command information, and that the only objection was to one interrogatory of Eden, because it concerned potential plaintiffs other than the Plaintiffs.  See Liberty at 11:30:32-31:34 (Marcus).  The Court concludes that chain-of-command information is reasonably calculated to lead to the discovery of admissible evidence.

Rule 26 provides for broad and liberal discovery.  See Gomez v. Martin Marietta Corp., 50 F.3d at 1520; Sanchez v. Matta, 229 F.R.D. at 654.  While it is true that relevance in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue."  Zenith Elecs. Corp. v. Exzec, Inc., 1998 WL 9181, at *2.  A request for discovery need only be reasonably calculated to lead to the discovery of admissible evidence.  See Fed. R. Civ. P. 26(b)(1).

In Walker v. THI of New Mexico at Hobbs Ctr., No. CIV 09-0060 JB/RLP, 2010 WL 552661, at *12 (D.N.M. Feb. 8, 2010)(Browning, J.), the plaintiff requested, among other things, production of any organizational charts which show all management personnel who had supervisory authority over her.  The defendant objected, arguing that the requests were directed at a different entity.  See Walker v. THI of New Mexico at Hobbs Ctr., 2010 WL 552661, at *12.

The Court disagreed with the Defendant, and ordered it to do a diligent search, and produce any of the requested documents within its control.   See Walker v. THI of New Mexico at Hobbs Ctr., 2010 WL 552661, at *12.

As the Court required the defendant to produce an organizational chart in Walker v. THI of New Mexico at Hobbs Ctr., the Court will require the Defendants here to produce an organizational chart.  The Court concludes that chain of command information is reasonably calculated to lead to the discovery of admissible evidence, because it can provide information regarding who is responsible for making the decision to classify the Plaintiffs as sex offenders. The Court denies the portion of the motion regarding the deputies and intake personnel without prejudice to the plaintiffs renewing that portion if necessary, but orders Houston to provide a chain of command organizational chart illustrating to whom the intake personnel are reporting, as far up the chain of command as necessary, so the Plaintiffs can decide whom it is proper to depose.   The Court thus orders the State Defendants to amend their answers once, making a good faith effort to find out who is in the chain of command for their respective departments, agencies, or political subdivisions, and if later the Plaintiffs need the answers updated, the Court will likely grant that request.   The parties agreed to this arrangement at the hearing as well.   See Liberty at 11:31:36-38:22.  This amendment will allow the Plaintiffs to determine who decides to classify people as sex offenders, and therefore who to depose, while not disclosing irrelevant information.

## III.   THE COURT WILL ORDER STATE DEFENDANTS AND HOUSTON TO ADMIT, DENY, OR STATE WHY THEY CANNOT ADMIT OR DENY THE RFAS.

The Plaintiffs ask the Court to compel the State Defendants and Houston to answer the RFA identifying the Defendants' job duties.   See Motion to Compel at 15.   According to the Plaintiffs, it is permissible to request that an official admit how a certain contract, statute or

regulation applies to him.   <u>See</u> Motion to Compel at 15.   The State Defendants assert that the Requests for Admission asked pure questions of law.   <u>See</u> State Defendants' Response at 8.   The Defendants argued at the hearing that the law creates the cabinet secretaries' duties, and the question thus requires a legal conclusion.   <u>See</u> Liberty at 11:40:25-41:28 (Marcus). Additionally, they added that the policies are irrelevant, because the Plaintiffs are not alleging supervisory liability.   <u>See</u> Liberty at 11:40:25-41:28 (Marcus).   At the hearing, Houston asserted that the Sheriffs' duties are a legal creation and that the RFAs are thus asking for a legal conclusion.   <u>See</u> Liberty at 11:41:32-42:35 (Martinez).

Rule 36(a)(1) allows for requests for admission applying "law to fact."   Fed. R. Civ. P. 36(a)(1).   However, "[t]he amended provision does not authorize requests for admissions of law unrelated to the facts of the case."   <u>Stark-Romero v. Nat'l R.R. Passenger Co. (AMTRAK)</u>, 275 F.R.D. at 554.   <u>See</u> 8B Charles A. Wright, Arthur R. Miller, Mary K. Kane & Richard L. Marcus, Fed. Prac. & Proc. Civ. § 2255, at 530 (3d ed. 2004)("[T]he [] rule does not allow a request for a pure matter of law.").   In <u>Stark-Romero v. Nat'l R.R. Passenger Co. (AMTRAK)</u>, the request asked for an admission that the New Mexico Department of Transportation was responsible for administering the federal grade-crossing improvement program in New Mexico.   <u>See</u> 275 F.R.D. at 557.   The Court held that this requirement sought an application of law to fact, rather than the answer to a pure matter of law; thus, the Court concluded that the plaintiffs were required to admit or specifically deny the RFA, or state in detail why they could not truthfully admit or deny it.   <u>See</u> 275 F.R.D. at 558.   The Court reasoned that the request "is closer to a request seeking application of law to the facts of the case. It is trying to narrow the range of entities that -- factually -- administer a particular program in New Mexico; it does not seek the admission of an abstract question of law."   275 F.R.D. at 558.

-41-

Here, the Plaintiffs' RFAs that ask whether the particular Defendant's duty or authority includes ensuring that the Defendant's agency's, office's, or political subdivision's "policies are in compliance with relevant state and federal laws, including the Fourteenth Amendment to the United States Constitution," seek to apply the law to the facts of the case.   They are not requests for pure matters of law "unrelated to the facts of the case."   Stark-Romero v. Nat'l R.R. Passenger Co. (AMTRAK), 275 F.R.D. at 554.   Whereas the RFA in Stark-Romero v. Nat'l R.R. Passenger Co. (AMTRAK) was trying to determine, factually, whether the Department of Transportation was responsible for administering a particular program, the RFAs here are also trying to determine, factually, if individual Defendants are individually involved in, or responsible for, ensuring their office's compliance with laws and the Constitution.   These RFAs are not asking whether the Constitution's Fourteenth Amendment protects an individual's privacy rights from state infringement.   Nor are they asking if the New Mexico Constitution's Due Process Clause protects an individual's privacy rights to the same extent as the United States Constitution's Due Process Clause.   They are not a question taken from the Multistate Bar Examination in true/false form, asking the Defendants to admit the truth of the bar exam question.   Rather, because at issue in this case, which sets forth a claim under 42 U.S.C. § 1983, is whether the policies of the Defendants' offices violated the Plaintiffs' constitutional rights, these RFAs are not unrelated to the case.

The other RFAs to which the Defendants object, asking the Defendants to admit whether it is their duty to implement certain plans, are even further from asking admission to pure matters of law in the abstract, without any reference to the facts.   They are asking for the Defendants to admit the application of law to the facts of the case.   The Plaintiffs' requests whether an individual Defendant's duty or authority includes implementing certain tasks or policies at issue in the case, like the RFAs asking if the Defendant is charged with ensuring his or her department's compliance

with law, are not asking a pure question of law without regard to the facts.   Rather, these RFAs also ask the Defendants to admit or deny a question designed to narrow down whether the particular individual defendant is responsible -- factually -- for implementing certain policies and tasks, and designed to "expedite [the] trial by establishing as true certain material facts of a case without the necessity of formal proof at trial."   Keen v. Detroit Diesel Allison, 569 F.2d at 554. As the Court concluded in Stark-Romero v. Nat'l R.R. Passenger Co. (AMTRAK), such a request is thus an application of law to fact rather than questions of law only.   The Plaintiffs' RFAs are thus pursuant to rule 36, and the Court will therefore overrule the Defendants' objections to the RFAs.

The State Defendants and Houston must admit or specifically deny a request for admission, or state in detail why they cannot truthfully admit or deny it.   See Fed. R. Civ. P. 36(a)(4); Stark-Romero v. Nat'l R.R. Passenger Co. (AMTRAK), 275 F.R.D. at 558.   To the extent that the Defendants' answers are objections, the Court will overrule the objections.   To the extent that the answers are statements regarding why the Defendants are not answering the requests for production, the answers do not conform to the rules set forth in rule 36(a)(4).   The Defendants must either admit or specifically deny the request for admission, or state in detail why they cannot truthfully admit or deny it.   See Fed. R. Civ. P. 36(a)(4).   If the Defendants are going to say that they cannot answer a request for admission, they have to track rule 36(a)(4)'s requirements.   See Fed. R. Civ. P. 36(a)(4).   This requirement means that, if they are going to respond that they cannot truthfully admit or deny the request for admission, because they do not have sufficient information, they must state "that [they] ha[ve] made reasonable inquiry and that the information [they] know[] or can readily obtain is insufficient to enable [them] to admit or deny."   Fed. R. Civ. P. 36(a)(4).   A reasonable inquiry means that a party has to ask their counsel, and if their counsel

knows the answer, they need to use that information to admit or deny.   See T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc., 174 F.R.D. at 43.

For these reasons, and the reasons stated on the record at the hearing, the Court concludes that the Defendants' answers to the Requests for Admission are inadequate, and the Court will thus overrule the objections to the RFAs.   The Court therefore finds that the Defendants' responses are insufficient, and will give the Defendants ten days to supplement their answers to the RFAs.

**IT IS ORDERED** that the Plaintiffs' Motion to Compel Answers and Responses to Plaintiffs' First Sets of Requests for Admission, Interrogatories, and Requests for Production to Defendants Montoya, Barela, Houston, Marcantel, and Eden, filed September 28, 2012 (Doc. 110), is granted in part and denied in part.   The Court orders Defendants Daniel Montoya, Susan Barela, Gregg Marcantel, Gordon E. Eden, Jr., and Dan Houston to: (i) produce ten files for individuals convicted of false imprisonment and ten files for individuals convicted of second degree kidnapping, from January 1, 2008, to December 31, 2010, and limited to Bernalillo County, New Mexico; (ii) produce chain-of-command charts; and (iii) admit, deny, or state in detail why they cannot admit the Requests for Admission.   The Defendants may redact the names and addresses of the false imprisonment and kidnapping files if they wish.   If that redaction process will be too burdensome, the Court will order the files produced under a confidentiality order stating for attorneys' eyes only.   Plaintiffs Ray Brown and Kenji Ausborn may later request more information if necessary.   The Court denies the portion of the motion regarding the County Deputies and intake personnel without prejudice.   The Court orders Montoya, Barela, Marcantel, Eden, and Houston to amend their answers to the Plaintiffs' Interrogatories asking for the organizational structure of their officer, agency, or political subdivision, making a good faith effort to find out who is in the chain of command; if, later, the Plaintiffs want the answers updated, the

Court will likely grant that request.   The Court overrules Defendants' objections to the Request

for Admission.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Paul J. Kennedy
Arne Leonard
Paul Kennedy & Associates
Albuquerque, New Mexico

> *Attorneys for the Plaintiffs Ray Brown and Kenji Ausborn*

Alfred A. Park
Lawrence M. Marcus
Park & Anderson, LLC
Albuquerque, New Mexico

> *Attorneys for Defendants Daniel Montoya, Daniel Dougherty, Susan Barela,*
> *Troy Ruplinger, Dan Houston, Gregg Marcantel, Gordon E. Eden, Jr.*

Jonlyn M. Martinez
Law Firm of Jonlyn M. Martinez
Albuquerque, New Mexico

> *Attorney for Defendants Liz Aguilar, Manuel Gonzales, III, and Dan Houston*