IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RAY BROWN, et al.,

        Plaintiffs,

v.                                                                                                  No. CV 10-00081 WJ/CG

DANIEL MONTOYA, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

THIS MATTER comes before the Court[1] upon Plaintiffs' Motion for Leave to File Second Amended Complaint (**Doc. 142**), filed on May 30, 2013. Having reviewed the parties' briefs and applicable law, the Court finds that Plaintiffs' motion is well taken in part and, therefore, is **GRANTED IN PART AND DENIED IN PART** as herein described.

### PROCEDURAL BACKGROUND

Given the lengthy history of this action and the parties' familiarity with the claims and procedural background, the Court will only discuss Plaintiffs' allegations and procedural posture to the extent necessary to address the instant motion. For purposes of this Order, Daniel Montoya, Daniel Dougherty, Susan Barela, Troy Ruplinger, Gregg Marcantel, and Gordon Eden[2]

---

[1] This case was assigned to the undersigned judge on July 11, 2014, as a result of the retirement and recusal of prior presiding judges.
[2] Since Gorden Eden is now the Chief of Police for the City of Albuquerque, the Court questions whether he should remain a defendant in this case.

are collectively referred to as "State Defendants"; Liz Aguilar, Manuel Gonzales, and Dan Houston are collectively referred to as "County Defendants."

Plaintiff Ray Brown brought his original complaint seeking damages and declaratory and injunctive relief relating to his placement on a sex offender program and registry. The Court denied a motion to dismiss brought by Montoya[3] and the former New Mexico Department of Corrections ("DOC") Secretary, but the Tenth Circuit affirmed that decision in part and reversed it in part, thereby eliminating certain damages claims against Montoya. *See Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011). In May 2012, the Court granted Brown's motion for leave to amend his complaint over the objections of Montoya, Aguilar, and Gonzales. The First Amended Complaint added Kenji Ausborn as a Plaintiff; replaced the previous DOC Secretary with Marcantel, the current Secretary; and added all other State and County Defendants.

Because all claims from the First Amended Complaint are carried over in Plaintiffs' proposed Second Amended Complaint, the Court will discuss these claims in brief. Count I raises a claim for damages against Montoya, Dougherty, Aguilar, Gonzales, and unidentified Defendants for alleged procedural due process violations relating to Brown's classification as a sex offender and the related registration requirement. Counts II and III, seeking injunctive and declaratory relief against the same Defendants as well as Marcantel and Eden, respectively ask the Court to declare it unconstitutional for those Defendants to require Brown to register and be classified as a sex offender and to declare that the DOC policies violate the constitution and laws of the state. Counts IV and V seek the same relief as Counts II and III but are brought against Barela, Ruplinger, Houston, Marcantel, Eden, and unidentified Defendants with respect to Ausborn's classification and registration as a sex offender.

---

[3] Montoya is or was a probation officer with the Department of Corrections, according to Brown's original complaint.

As discovery proceeded, Bernalillo County Sheriff's Office ("BCSO") Deputy Glen Metzger applied for and obtained an arrest warrant for Ausborn for failure to register as a sex offender. Ausborn was arrested pursuant to this warrant on January 23, 2013. In late May 2013, prior to the Court-imposed deadline to amend pleadings, Plaintiffs filed the instant motion seeking leave to amend the complaint a second time. State Defendants filed a response brief on June 13, 2013, and County Defendants filed a response brief four days later. Plaintiffs filed a reply on June 30, 2013.

## DISCUSSION

### I.      Legal Standard

After previous amendments have been allowed, a plaintiff may amend the complaint only by leave of the court or upon written consent of the adverse parties. *See* FED. R. CIV. P. 15(a)(2). Rule 15(a) states that leave shall be freely given when justice so requires. *Id.* However, if the court determines there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice, or futility of the amendment, a court may deny leave to amend. *Foman v. Davis*, 371 U. S. 178, 182 (1962). "A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason . . . ." *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 562 (10th Cir. 1997) (citations omitted).

Under Federal Rule of Civil Procedure 8(a), a plaintiff's burden to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007) (citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that a plaintiff's complaint must set forth more than a threadbare recital "of the elements of a

cause of action, supported by mere conclusory statements"). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 545 (citation omitted). Thus, a plaintiff's complaint is subject to dismissal if it fails to contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 570; *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010) (citations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## II.     Analysis

Plaintiffs' proposed Second Amended Complaint adds many pages of new facts, several new Defendants, and four new claims. With respect to the existing five claims, Plaintiffs propose adding New Mexico Department of Public Safety ("DPS") employees Regina Chacon and Teresa Hernandez and BCSO employee Marcella Baca as Defendants and removing all unnamed Defendants. Plaintiffs also propose adding DOC employee Emily Edinger and BCSO employee Felicia Henderson as Defendants in Count I.

The new claims all relate to Ausborn's January 2013 arrest. In Count VI, Ausborn seeks damages from Edinger, Ruplinger, Baca, Metzger, Chacon, and Hernandez for alleged due process violations. Counts VII and VIII are brought against Metzger alone for purportedly seizing Ausborn unlawfully and for alleged violations of state law. Count IX seeks injunctive relief against Houston, Baca, Marcantel, Eden, Chacon, and Hernandez and a declaration that the actions taken by these Defendants violate state and federal constitutional prohibitions on *ex post facto* laws and bills of attainder.

### A. Counts I-V, VII, and VIII

State Defendants take no position on Plaintiffs' proposal to add or amend Counts I-V, VII, and VIII. By contrast, County Defendants oppose amending the complaint to state any federal claims against Baca, Henderson, or Metzger because those Defendants are protected by qualified immunity. Since Counts III and V relate entirely to a purported inconsistency between Defendants' actions and state law, this means that no Defendant has voiced opposition to amending those claims as proposed by Plaintiffs. Further, Count VIII against Metzger relates entirely to alleged state law violations. Given the liberal standards governing leave to amend and the lack of opposition to amending the complaint with respect to Counts III, V, and VIII, the Court grants Plaintiffs' motion as to these claims and the relevant factual allegations.

The Court construes County Defendants' qualified-immunity argument to state that the proposed amendments to Counts I, II, IV, VI, VII, and IX would be futile to the extent that they bring federal claims against Baca, Henderson, or Metzger. However, qualified immunity "is an affirmative defense that must be raised by the party alleging it." *Gagan v. Norton*, 35 F.3d 1473, 1477 (10th Cir. 1994) (citing *Gomez v. Toledo*, 446 U.S. 635, 640-41 (1980)). The Court cannot make a finding that amending the complaint as to these three individuals would be futile on qualified-immunity grounds unless and until they are added as party Defendants to this action and then they can raise the qualified immunity defense themselves. *See id.* The Court therefore holds that the proposed amendments with respect to claims against Baca, Henderson, and Metzger are not futile simply because these three individuals can assert a qualified immunity defense in the future. Accordingly, the Court grants Plaintiffs' motion as to Counts I-V, VII, and VIII in full.

B.  Count VI

Count VI, alleging procedural due process violations under the Fourteenth Amendment for Ausborn's January 2013 arrest, is brought against Edinger, Ruplinger, Baca, Metzger, Chacon, and Hernandez. State Defendants argue that the factual allegations relevant to Count VI fail to state a claim against any Defendant other than Metzger. Specifically, they argue that one or more superseding causes relieve all Defendants except Metzgar of liability and that no other Defendant took any action that was the proximate cause or the cause in fact of the alleged due process violation. Plaintiffs reply that they have appropriately pleaded causation with respect to each Defendant cited in Count VI and that the viability of the proposed amendment cannot be defeated by an affirmative defense of superseding cause when the claim itself is plausible.

Individual liability in § 1983 claims may only be premised on the personal involvement of the alleged wrongful actor. *See Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (citation omitted). Still, this does not mean that direct participation in the alleged violation is necessary; "[a]ny official who 'causes' a citizen to be deprived of [his] constitutional rights can also be held liable." *Id.* (quoting *Buck v. City of Albuquerque*, 549 F.3d 1269, 1279 (10th Cir. 2008)). "The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights." *Buck*, 549 F.3d at 1279 (quoting *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990)).

Although causation in the § 1983 context incorporates the common-law tort principles of proximate and "but-for" causation, a superseding cause relieves the defendant of liability. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006) (citations omitted). An act can be considered a superseding cause only if it is a "cause of independent origin that was not

foreseeable." *Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1192 (2011) (quoting *Exxon Co., USA v. Sofec, Inc.*, 517 U.S. 830, 837 (1996)); *see also Trask*, 446 F.3d at 1046-47 (citation omitted).

According to the proposed Second Amended Complaint, Chacon and Hernandez reached a final decision that Ausborn must comply with the sex-offender registration requirements. Edinger personally placed Ausborn on a list of offenders required to register as sex offenders without complying with the appropriate procedures, and Ruplinger and Baca then compelled Ausborn to sign paperwork registering him as a sex offender under threat of arrest. Thereafter, Metzger applied for and obtained a warrant for Ausborn's arrest for failure to register in January 2013. Each of these allegations, taken as true, indicates personal involvement in the alleged violation of Ausborn's right to procedural due process, in both a but-for and a proximate sense.

State Defendants argue that two different superseding causes relieve all Defendants other than Metzger of liability. First, they highlight Plaintiffs' allegation that Metzger and other BCSO employees "mak[e] their own unilateral determinations of who is required to register as a sex offender," thereby arguing that Metzger's application for Ausborn's arrest warrant constituted a superseding cause of the arrest. This is particularly the case, they continue, if Ausborn actually registered as a sex offender but Metzger sought his arrest anyway. Second, State Defendants contend that if Ausborn failed to register as a sex offender, that failure was itself a superseding cause of his arrest.

Yet State Defendants' raising of the affirmative defense of superseding cause does not defeat the plausibility of Plaintiffs' claim, which is the ultimate standard for futility of amendment. *See Iqbal*, 556 U.S. at 678; *Bauchman*, 132 F.3d at 562. The superseding-cause defense does not "appear[] plainly on the face of the complaint itself," *see Anderson Living Tr. V. WPX Energy Prod., LLC*, --- F. Supp. 2d ---, 2014 WL 2750652, at *17 (D.N.M. 2014)

(quoting *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965)), and the foreseeability of State Defendants' actions leading to Ausborn's arrest is a genuine issue of fact that the record currently before the Court does not resolve, *see Miller*, 345 F.2d at 893; *see also Staub*, 131 S. Ct. at 1192 (citation omitted) (noting that a superseding act defeats liability only if it is a "cause of independent origin that was not foreseeable"). A denial of leave to add this claim on futility grounds would therefore be inappropriate.

Plaintiffs have alleged sufficient facts to allow a plausible inference that each of the Defendants named in Count VI were personally involved in the due process violation alleged in that claims. Therefore, the Court grants Plaintiffs' request to amend their complaint with respect to Count VI and relevant factual allegations.

C. Count IX

Although Ausborn was convicted of second-degree kidnapping in 1997, he alleges that he was forced to register as a sex offender under amendments to the New Mexico Sex Offender Registration and Notification Act ("NMSORNA") passed in 2000. *See* 2000 N.M. Laws Ch. 8 (S.B. 125) (codified at N.M. STAT. ANN. § 29-11A-1, *et seq.* (2000)). In the final count of the proposed Second Amended Complaint, Plaintiffs allege that Ausborn's classification as a sex offender under that amendment violated federal and state constitutional prohibitions on *ex post facto* laws and bills of attainder. Though State Defendants insist that the constitutionality of sex offender registration requirements under these constitutional clauses is well-established, Plaintiffs reply that there are grounds to believe that the caselaw addressing these questions is in flux or is inapplicable to the instant claim.

Article I, Section 10, Clause 1 of the United States Constitution prohibit states from enacting any retroactive punishments in the form of bills of attainder or *ex post facto* laws. When

a party alleges that a statute violates the *Ex Post Facto* Clause, the reviewing court must "ascertain whether the legislature meant the statute to establish 'civil' proceedings" instead of punishment. *See Kansas v. Hendricks*, 521 U.S. 346, 361 (1997). If so, the court must further inquire as to whether the statutory scheme is "'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" *Id.* The question of a statute's purpose is largely a matter of statutory construction, determined with reference to the statute's text and structure. *See Smith v. Doe*, 538 U.S. 84, 92 (2003). A statute's effect is analyzed under several non-exhaustive, non-dispositive factors, including whether the regulatory scheme imposed by the statute "has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose." *See id.* at 97 (citing *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963)). "Because [courts] ordinarily defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* at 92 (internal citations and quotation marks omitted). The New Mexico Constitution also prohibits the state legislature from enacting *ex post facto* laws or bills of attainder, *see* N.M. CONST., Art. 2 § 19, and analyzes *ex post facto* claims under the same framework, *see State v. Druktenis*, 135 N.M. 223, 233 (N.M. Ct. App. 2004).

 In *Smith*, the Supreme Court considered the *ex post facto* implications of an Alaskan sex registration statute that is similar in many ways to NMSORNA. *See id.* at 235 (citing *Smith*, 538 U.S. at 103-04) (recognizing the applicability of the *Smith* analysis to NMSORNA). Alaska's law was designed to apply registration and notification requirements retroactively to persons convicted of qualifying crimes even before the statute was passed. *See Smith*, 538 U.S. at 90-91.

Relying on the text and structure of the statute as well as the *Mendoza-Martinez* factors, the Supreme Court concluded that the Alaska statute was intended to create "a civil, nonpunitive regime," *id.* at 96, and that the parties challenging the law were unable to show "that the effects of the law negate[d] Alaska's intention to establish a civil regulatory scheme," *id.* at 105. Thus, the Court held that the Alaska law did not violate the federal *Ex Post Facto* Clause despite its retroactive application. *Id.*

In *Druktenis*, the New Mexico Court of Appeals, finding no reason to interpret the state constitutional prohibition on *ex post facto* laws any differently than the federal clause, concluded that NMSORNA violates neither the state nor federal constitutional provisions. *See* 135 N.M. at 233-36. As such, although the defendant in that case had been convicted of kidnapping and other charges prior to their inclusion as "sex offenses" in NMSORNA, the Court of Appeals determined that his involuntary inclusion in the statute's regulatory framework did not constitute an *ex post facto* punishment. *See id.*; *see also Montoya v. Driggers*, --- N.M. ---, 320 P.3d 987, 988-89 (N.M. 2014) (citing *Druktenis*, 135 N.M. at 233).

With respect to Plaintiffs' federal claim, the Court finds that NMSORNA is virtually indistinguishable in purpose and effect from the Alaskan statute analyzed in *Smith*. As the *Druktenis* court persuasively held, an application of the *Mendoza-Martinez* factors to NMSORNA leads to the conclusion that the statute constitutes "a civil, remedial, regulatory, nonpunitive law" whose provisions "do not involve affirmative disability or restraint; have not historically been regarded as punishment; do not come into play only on a finding of scienter; only incidentally, if at all, promote traditional aims of retribution and deterrence; . . . have a rationally connected, nonpunitive purpose[;]" and do not impose an excessive sanction relative to their public safety purposes. *See Druktenis*, 135 N.M. at 233-35; *see also Smith*, 538 U.S. at 96,

105. In light of the Supreme Court's strong guidance in *Smith*, the Court has little difficulty concluding that NMSORNA, like the Alaskan statute at issue there, does not violate the federal *ex post facto* clause. Although Plaintiff cites several recent cases to suggest that the Supreme Court is "retreating" from its holding in *Smith*, the Supreme Court did not decide those cases on *ex post facto* grounds and has given no indication that *Smith* is no longer controlling.

      As to the state claim, the New Mexico Court of Appeals decision in *Druktenis* considered the same amendments passed in 2000 under virtually identical factual circumstances and concluded that their application to the defendant raised no *ex post facto* issues. Because the state supreme court has not reached this question in full, the Court is bound by *Druktenis*'s holding that NMSORNA does not violate the state constitution's proscription against *ex post facto* laws. *See, e.g.*, *Commonwealth Prop. Advocates, LLC, v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1204 (10th Cir. 2011) ("Where the state's highest court has not addressed [an] issue, we still follow the state's intermediate court decisions absent 'convincing evidence that the highest court would decide otherwise.'") Seeking to avoid this conclusion, Plaintiffs list a small number of states where sex offender registration laws have been held to violate state constitutional protections against *ex post facto* laws, then coyly ask, "Will New Mexico be the next?" The Court has no difficulty answering this question in the negative. Although the New Mexico Supreme Court has not officially adopted the New Mexico Court of Appeals' holding in *Druktenis*, it recently adopted that decision's underlying analysis and concluded that NMSORNA is a civil, nonpunitive law that satisfies the *Mendoza-Martinez* factors. *See Montoya*, 320 P.3d at 989 (quoting *Druktenis*, 135 N.M. at 233). Moreover, the other cases and passages cited by Plaintiffs have no bearing on the potential *ex post facto* implications of NMSORNA.

The Court also holds that Plaintiffs have failed to state a claim under the Bill of Attainder Clauses of the federal and state constitutions. Bills of attainder are "legislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial." *United States v. Lovett*, 328 U.S. 303, 315 (1946). The Court has already concluded under its *ex post facto* analysis that NMSORNA does not inflict punishment and serves a valid nonpunitive civil regulatory purpose. By definition, then, NMSORNA cannot constitute a bill of attainder. *Cf. Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 475-76 (1977) (noting that a statute that imposes no punishment and "further[s] nonpunitive legislative purposes" is not a bill of attainder).

The Court acknowledges that its analysis of NMSORNA under the relevant constitutional clauses is somewhat cursory but sees no need to elaborate further when binding and persuasive caselaw applies the relevant analysis to this or functionally identical statutes in greater depth. *See, e.g.*, *Druktenis*, 135 N.M. at 233-36. More importantly, the Court notes that Plaintiffs do not actually allege that NMSORNA itself violates either clause. Instead, Plaintiffs claim that certain Defendants' actions leading to Ausborn's arrest "ha[d] the effect of retroactively converting . . . NMSORNA from . . . a civil, regulatory statute to a criminal, punitive statute." The actions at issue in Count IX are not "legislative acts" or "enactments" for the purposes of either the *Ex Post Facto* Clauses or the Bill of Attainder Clauses. *See Garner v. Jones*, 529 U.S. 244, 249 (2000) (*ex post facto*); *Lovett*, 328 U.S. at 315 (bill of attainder). Instead, Count IX appears to be a second due process claim relating to Ausborn's arrest disguised as another claim. Because Count VI already states a due process claim, and because Plaintiffs do not state a claim against the named Defendants under the *Ex Post Facto* and Bill of Attainder Clauses, Count IX must be

deemed futile. Accordingly, the Court denies Plaintiffs' motion for leave to amend with respect to this claim.

## CONCLUSION

For the reasons previously stated, Plaintiffs' Motion for Leave to File Second Amended Complaint **(Doc. 142)** is hereby **GRANTED IN PART AND DENIED IN PART**. Plaintiffs are allowed leave to amend their complaint with respect to Counts I through VIII and the relevant factual allegations. Plaintiffs are denied leave to amend with respect to Count IX. Plaintiffs shall file a Second Amended Complaint that is consistent with this Memorandum Opinion and Order no later than **October 1, 2014**.

    **SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE